IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE TOHONO O'ODHAM NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-02236-JR |
| | ) | Judge James Robertson |
| DIRK KEMPTHORNE, ROSS O. | ) | **(Electronically filed January 18, 2008)** |
| SWIMMER and HENRY M. | ) | |
| PAULSON, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S STATUS REPORT

### I.    INTRODUCTION

Plaintiff-Beneficiary, the Tohono O'odham Nation ("the Nation"), has waited far too long for Trustee-Delegates to fulfill their most fundamental obligations, including the provision of a fair and adequate accounting of the Nation's trust assets.  This Court – despite voicing skepticism of Trustee-Delegates' motion to remand (*see* 6/6/07 Status Conference Tr. at 51) – has bent over backwards to allow the government to present its theory of the case.  But now for unassailable reasons, this Court has properly rejected the government's "this-is-nothing-but-an-agency-review case" theory of the case and its attempt to delay these proceedings indefinitely.  It is time for no further delay.  It is time to move this case along swiftly to its proper resolution.

In its Memorandum Order dated December 19, 2007, this Court denied Trustee-Delegates' motion for a six-month remand and stay in this litigation and each of the 36 other tribal trust accounting cases pending before the Court.  The December 19 Order also lifted

the temporary stay of litigation that had been granted on July 2, 2007 to allow for Trustee-Delegates' remand request to be presented and decided, and directed each plaintiff tribe to file a status report within 30 days "setting forth proposals for further proceedings and a proposed schedule." *See* 12/19/07 Memo Order at 12.

The Nation submits this Status Report in accordance with the Court's December 19 Order.

## II.    DEVELOPMENTS IN THE LITIGATION PRIOR TO THE TEMPORARY STAY ISSUED ON JULY 2, 2007.

### A.    The Nation's Claim for an Equitable Accounting.

On December 28, 2006, the Nation initiated this action for an equitable accounting of its trust funds and other assets held by Trustee-Delegates.  As such, the Nation not only seeks an accounting of its trust funds, but also of information regarding the Nation's underlying trust accounts and resources, such as leases, rights-of-way and easements.  To date, the Nation has been unable to obtain vital information regarding its trust assets from Trustee-Delegates.[1]

In this action, the Nation seeks, *inter alia*, a declaration that Trustee-Delegates owe a fiduciary duty to provide a complete and accurate accounting of all such funds and assets and that they are in violation of this trust duty.  Further, to the extent that the accounting demonstrates errors in the account balance, whether positive or negative, the Nation seeks a

---

[1]  Even after 13 months of litigation, virtually no trust information has been produced in this case.  Indeed, Trustee-Delegates have failed even to make the initial disclosures required under Rule 26.  Instead, they have taken the position that the equitable accounting action filed in this Court is nothing more than an APA-type "review on an administrative record," exempting Trustee-Delegates from the need to comply with the disclosure requirements of FRCP 26(a)(1). Accordingly, a Case Management Plan and Scheduling Order permitting pre-trial discovery after months of unwarranted delay is an absolute necessity.

2

decree directing the restatement and correction of its trust account balances reflecting the results of the accounting. Finally, the accounting may reveal other breaches of trust that will require further equitable relief which may be appropriate under the circumstances (*e.g.*, an order mandating the Trustee to bring an action against a third party, *see, e.g.*, Restatement (Second) of Trusts § 177 ("Duty to Enforce Claims")) or reveal other actions that the Nation may have to commence in other tribunals.

Contrary to what Trustee-Delegates contend, this is no ordinary APA review case, as this Court has now recognized (*see* 12/19/07 Memo Order at 8-9). As set forth in the Complaint, the Nation's claim is an action to enforce trust obligations – both express and implied – arising under the laws of the United States. As such, this case is expressly pleaded as an action under 28 U.S.C. § 1331.

This action thus involves the inherent equitable powers of this Court to enforce the trust created by federal statutes – and not the mere review of an administrative record as Trustee-Delegates have contended. Indeed, it is Trustee-Delegates' failure to fulfill their accounting obligations owed the Nation for decades that necessitates this suit in the first place. As a result, "[t]he narrower judicial powers appropriate under the APA do not apply [in this suit] . . . because the underlying lawsuit is both an Indian case and a trust case in which trustees have egregiously breached their fiduciary duties." *Cobell v. Norton*, 391 F.3d 246, 257-58 (D.C. Cir. 2004) ("*Cobell XIII*").

Trustee-Delegates therefore cannot evade accountability – as they have sought to do thus far in this litigation – by claiming that the Nation has no right to engage in pre-trial discovery until after an "administrative record" has first been completed and reviewed. This identical contention has been flatly rejected by the Court as "ill-founded" and "unsound" in

the *Cobell* trust litigation, in which individual Indian trust beneficiaries have similarly sought to enforce Trustee-Delegates' accounting obligations in the face of decades of mismanagement and neglect.  *See Cobell v. Norton*, 226 F.R.D. 64, 92 (D.D.C. 2005).

Moreover, as this Court has now determined in denying Trustee-Delegates' remand-and-stay-request, "[t]hese cases, like *Cobell*, sound in traditional equity as well as in administrative law. . . ."  12/19/07 Memo Order at 7.  Consequently, "it is the Court's obligation to define the trustee's legal duties and resolve the various charges raised in plaintiffs' complaints."  *Id.* at 8-9.  And pre-trial discovery is absolutely critical as a litigation tool which will "aid in the court's determination of such threshold questions of duty and breach."  *Id.*

The Nation submits that the case management order it proposed in this case eight months ago provides the proper foundation for further proceedings consistent with the Court's December 19 Memorandum Order.  The elements of the Nation's plan and Trustee-Delegates' APA-based opposition (a dispute which this Court has now effectively resolved in the Nation's favor) are examined in the Sections below.

> **B.     The Case Management and Discovery Plan Initially Proposed by the Nation.**

During the meeting of counsel for the parties on April 11, 2007 (per Federal Rule 26(f) and Local Rule 16.3(c)), the Nation presented a plan for the conduct of this litigation intended to resolve its equitable accounting claim in an orderly and timely fashion.  This same case management plan – with minor modifications to accommodate government counsel's concerns – was later included in the Joint Report filed in this case on May 4, 2007.

4

It was also outlined by counsel during the Status Conference on June 6, 2007.  [Hearing Tr. at 12-15].

The Nation's request for entry of such a CMO was pending as of the Court's entry of the July 2 stay.  With the lifting of that stay on December 19, this case management issue is now ripe for decision.

Pursuant to the Nation's proposed CMO, the litigation would be divided into two phases:  (1) Declaratory Relief; and (2) Accounting Trial & Remedies.

Phase I – The initial phase is intended to address and resolve the Nation's requests for declaratory relief set forth in Count One of the Complaint (*see* Complaint at ¶¶ 32-39).  The issues to be addressed in Phase I are to include:  (1) identification of certain of the fiduciary duties applicable to this trust; (2) the nature and scope of Trustee-Delegates fiduciary duty to account;[2] and (3) whether they are in breach of this trust duty as claimed by the Nation. These are precisely the types of "threshold questions" the Court has now confirmed are to be addressed in this litigation.  *See* 12/19/07 Memo Order at 9.

The six-month period proposed for Phase I discovery (both factual and expert) under the Nation's CMO would focus on such threshold issues of duty and breach.  And as a starting point, Trustee-Delegates would be required to produce all of the financial data and records referenced in their Answer and to identify any such materials which Trustee-Delegates contend satisfy their accounting obligation.

---

[2] As noted in Section III below, since the CMO was initially prepared eight months ago, Trustee-Delegates have admitted that they owe such an accounting duty.  However, further questions remain for the Court to decide, including key determinations with respect to the nature and scope of that fiduciary obligation.

US2000 10561914.1

No later than 45 days after the conclusion of Phase I discovery, the Nation would move for summary judgment.[3]  This motion would seek, among other things, a declaration setting forth certain duties applicable to this trust – including the fiduciary duty to account for all trust assets and that Trustee-Delegates had breached that duty.  In the event the Court determined that issues of material fact remained regarding any Phase I issue, the Court would specially set a trial to resolve those factual issues.[4]

Phase II ("Accounting Trial & Remedies") -- Within 30 days of the Court's ruling on Phase I issues in favor of the Nation, a further scheduling order would then issue governing Phase II proceedings.  Although the Nation submits that the details of this further order will not need to be determined until after Phase I, it is anticipated that the "Accounting Trial & Remedies" Phase would require an additional 12-month period to be completed (including additional factual and expert discovery).  The Phase II "Accounting" trial would be scheduled at the end of this period, thereby allowing Trustee-Delegates ample time "for further agency consideration in harmony with the court's holding."  *See* 12/19/07 Memo Order at 9.  Phase II discovery in turn would be necessary to permit the Nation to evaluate and test Trustee-Delegates' accounting methodology and the data on which it is premised,

---

[3] Per the proposed CMO, however, the Nation would not be precluded from moving for partial or whole relief regarding certain threshold issues (*e.g.*, the nature and scope of the accounting obligation owed by Trustee-Delegates) in advance of the completion Phase I discovery.  Indeed, the resolution of such legal questions at an earlier stage could well facilitate further Phase I proceedings by helping to frame other questions of law and fact and to identify the need for further discovery.

[4] The CMO which the Nation initially submitted, suggested May 2008 as the date for any Phase I trial that might be needed.  Eight months have now passed, so that a change in the Phase I trial date and other changes are now necessary.  Accordingly, the Nation is submitting an updated Case Management Plan and Phase I Scheduling Order (hereinafter the "Updated CMO," a copy of which is attached as Exhibit "A") which substitutes a "January 2009" date for any such specially set Phase I trial.  Additional modifications in the Nation's Updated CMO are addressed in Section III below.

US2000 10561914.1

and to determine whether certain exceptions and objections to Trustee-Delegates' work product might be warranted.

At the Phase II trial, Trustee-Delegates would present their accounting of trust assets belonging to the Nation in conformity with this Court's determinations regarding the nature and scope of the accounting duty, and the Court then would hear the Nation's exceptions and objections to the accounting. Following the Accounting Trial, the Court would determine whether Trustee-Delegates have complied with their declared trust duties. The propriety of any additional equitable relief would also be addressed at that time.

### C. **Defendants' APA-Based Objections.**

Without proposing any Case Management Plan of their own (aside from their request for the remand and stay the Court has now denied), Trustee-Delegates opposed key elements of the Nation's CMO as unnecessary in what they termed an "APA-review" case [*see* 5/4/07 Joint Report at 11-12 and 18-20]. Most notably, Trustee-Delegates took issue with the Nation's proposal that the Court address the threshold issues of trust duty and breach, urging instead that the litigation be stayed (or dismissed altogether) so as to allow Interior to "exercise its primary responsibility and discretion to define and complete the accounting for the Tribe, as Interior deems required . . . ." Joint Report at 11. Trustee-Delegates further objected across-the-board to the allowance of any of the pre-trial discovery called for under the Nation's CMO, and requested that the Court "prohibit formal discovery in this case." Joint Report at 18.

Under Trustee-Delegates' contrary approach, the Nation would effectively be put in the position of continuing to wait indefinitely for Interior to produce some version of a purported "accounting" without the Nation's being allowed any meaningful opportunity to

test the accuracy or reliability of Trustee-Delegates' accounting work product through discovery and appropriate review of the Nation's own trust information – and without the benefit of the Court's review as to the sufficiency of Trustee-Delegates' efforts.  This is a far cry from the type of accounting the Nation is clearly entitled to receive under traditional equitable principles.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) ("The extent of the duties . . . of a trustee is determined by the rules of law that are applicable to the situation; and not the rules that the trustee or his attorney believes to be applicable, and by the terms of the trust as the court may interpret them, and not as they may be interpreted by the trustee himself or by his attorney"); *Cobell v. Norton*, 240 F.3d 1081, 1103 (D.C. Cir. 2001) ("*Cobell VI*") (recognizing that "[t]he trustee's report must contain sufficient information for the beneficiary readily to ascertain whether the trust has been faithfully carried out" (citations and internal quotations omitted)).

## III.  FURTHER PROCEEDINGS NOW THAT THEY JULY 2 STAY HAS BEEN LIFTED AND DEFENDANTS' THEORY THAT THIS IS MERELY AN AGENCY REVIEW CASE HAS BEEN REJECTED.

In denying Trustee-Delegates' remand-and-stay request on December 19, 2007, the Court laid to rest Trustee-Delegates' principal argument in opposition to the Nation's CMO – *i.e.*, that this accounting action is nothing more than a typical APA review case.  As the Court has now made clear, "[t]hese cases, like *Cobell*,  sound in equity as well as in administrative law. . . ."  12/19/07 Mem. Order at 7.  And as such, the following principles govern further proceedings in these matters:

- First and foremost, "it is the court's obligation to define the trustee's legal duties and resolve the various charges raised in plaintiffs' complaints."  12/19/07 Memo Order at 8-9.  Indeed, the resolution of plaintiffs' claims for declaratory and injunctive relief

8

"require analysis of trust and administrative law principles" that the Court (rather than agency officials) is particularly competent to provide. *See id*. at 9.

- There is *no* legitimate reason to delay the Court's determination of "threshold questions of duty and breach" – particularly when the accounting plan Trustee-Delegates now claim to be committed to developing is "its response to trust-related concerns the department has been aware of for at least twenty years." *Id*. at 10. Indeed, in light of the recent admission by Trustee-Delegates that they have not even begun the accounting required by law (*see* 8/10/07 Remand Mo. at 22), it is appropriate to proceed forthwith in the manner outlined in the Updated CMO.

- Further, once Trustee-Delegates have been found by the Court to be in breach of their declared fiduciary duties, it may be "proper" to allow for "further agency consideration in harmony with the court's holding" before the litigation is concluded. *Id*. at 9. But in the end, it is for the Court to determine whether Trustee-Delegates have fulfilled their fiduciary duties in accordance with the law, and whether appropriate steps have been taken to rectify any declared breaches of their trust duties. *See id*. at 8-9.

With the lifting of the July 2 stay, the Court can now proceed to address and decide "threshold questions" of Trustee-Delegates' duties and their breach. The adoption of the Nation's Updated CMO would allow this "next step" to be accomplished by the end of this calendar year. Pursuant to the same CMO, Phase II "Accounting & Remedies" issues could then be presented and resolved by the end of 2009. The Nation therefore urges the Court to

US2000 10561914.1

adopt the Updated CMO without further delay, and to address the other case management issues set forth below.

### A.    Plaintiff's Updated Case Management and Phase I Scheduling Order.

The provisions of the Updated CMO (*see* Exhibit "A") are virtually unchanged from what the Nation presented in the Joint Report filed with the Court eight months ago.

As before, the Updated CMO calls for bifurcated proceedings, thus permitting the Court to decide the threshold questions of trust duty and breach during the initial "Declaratory Relief" phase. Deciding these key issues in this fashion will permit Trustee-Delegates the opportunity to take the Court's holdings into account as they proceed with accounting-related activities during Phase II of the litigation.[5] This in turn would be entirely consistent with the Court's December 19 articulation of principles governing further proceedings in the tribal trust cases. *See* 12/19/07 Memo Order at 7-10.

As before, the updated CMO also would require that as a first step in Phase I discovery, Trustee-Delegates produce all of the materials referenced in the Answer they filed in this case in March 2007. This is made critically necessary because the current lack of clarity regarding Trustee-Delegates' position. In response to allegations in the Complaint that Trustee-Delegates have breached their trust duty to account for the Nation's trust funds and assets, Trustee-Delegates repeatedly made reference to "financial and accounting data and documentation," "statements of account" and other "trust account information" they claim to have furnished to the Nation. *See* Answer at ¶¶ 2, 3, 5, 21, 30, 34, 36, 37 and 38. It

---

[5] This is not to say that Trustee-Delegates should not commence their accounting effort ***immediately*** (if they have not already done so), as there is plenty they can begin doing without the Court's guidance. But as the December 19 Memorandum Order recognizes, the Court's guidance will also be essential to ensure that Trustee-Delegates fully comprehend the nature and scope of their fiduciary duties.

US2000 10561914.1

is unclear from Trustee-Delegates' responsive pleadings, however, whether they actually intend to rely on any such materials as claimed satisfaction of the fiduciary duty that they allegedly owe.

Accordingly, the Updated CMO would require that Trustee-Delegates produce any and all such referenced materials within 30 days of the issuance of the Court's Order. At the same time, Trustee-Delegates also would produce all work papers and other background source documents related thereto, and they would be required to specify at that same time which of the produced items (if any) they contend constitutes a complete (or even partial), accurate and adequate accounting of all trust assets belonging to the Nation as required by law. *See* Updated CMO at ¶ 2(a).

Requiring such disclosures at the outset will facilitate Phase I discovery and help to frame the issues to be presented to the Court during the "Declaratory Relief" Phase. Among the relief requested by the Nation in Count One of its Complaint is a determination that the Arthur Andersen reports prepared by Defendants' contractors more than a decade ago do not constitute in any respect the complete, accurate and adequate accounting required under law. *See* Complaint at ¶ 38. Depending on the position taken by Trustee-Delegates in complying with Paragraph 2(a) of the Updated CMO, it then may be possible to determine whether the Arthur Andersen reports (and other reports) present a Phase I issue necessitating further discovery and summary adjudication during Phase I. Similarly, Trustee-Delegates' other responses per Paragraph 2(a) may help to significantly narrow and focus further Phase I proceedings.

In the Joint Report filed with the Court in May 2007, Trustee-Delegates took issue with this particular CMO provision – not on grounds that the information to be elicited was

11

of no relevance but because in Trustee-Delegates' view such a disclosure could only properly be required vis-à-vis the service of written discovery requests for production and admissions pursuant to Federal Rules 34 and 36, respectively.  *See* Joint Report at 19.[6]

This is incorrect.  The Court clearly has the authority to direct that such disclosures be made pursuant to its broad case management authority.  *See, e.g.*, Federal Rule 16(c)(1) (empowering the Court to "take appropriate action with respect to the formulation and simplification of the issues"); Rule 16(c)(6) and (c)(12) (authorizing "the control and scheduling discovery, including orders affecting disclosures . . .; as well as the adoption of "special procedures for managing potentially difficult or protracted actions"); ***and*** Rule 16(c)(16) (recognizing the broad authority of the Court to address "such other matters as may facilitate the just, speedy and inexpensive disposition of the action").  Moreover, imposing such a disclosure requirement on Trustee-Delegates at the onset of Phase I discovery would serve to reduce the delay that will otherwise result if the Nation is required to seek the very same information by means of written discovery.  Given the extensive delay already created by the temporary stay Trustee-Delegates were granted on July 2 for the purpose of presenting their failed remand request, the Court should utilize its Rule 16 authority in this instance to move the case forward without needlessly compounding such delay.

With respect to the other provisions of the Updated CMO, there is one change of particular significance for the Phase I proceedings.  The CMO submitted eight months ago indicated that among the questions to be addressed and resolved in Phase I would be whether Trustee-Delegates had a duty to account for the Nation's trust assets.  *See* 5/4/07 proposed

---

[6] Trustee-Delegates effectively sought to avoid making any such disclosures whatsoever, inasmuch as the position taken elsewhere in the same Joint Report was that "the Court should prohibit formal discovery in this case."  *See id.* at 18.

CMO at paragraph 1(a). During the June 6 Status Conference, however, government counsel conceded that there was indeed such a duty (Hearing Tr. at 39).[7] And the motion for remand that Trustee-Delegates thereafter filed in this and the 36 other tribal trust cases tacitly acknowledged the existence of such a trust duty in requesting a six-month "time out" to allow Interior to develop a plan to satisfy such an obligation. *See* 8/10/07 Remand Mo. at 22 (referring to the historical accounting plan Trustee-Delegates proposed to formulate as "[t]he first step in providing a full and complete accounting . . . .").

Accordingly, Paragraph 1(a) of the Updated CMO has been amended to reflect that Defendants have now admitted that an accounting duty is owed. Of course, while this threshold issue has been resolved, other key legal questions remain to be decided by the Court in the first phase of the litigation. Among these are issues relating to the nature and scope of Trustee-Delegates' accounting obligation; and whether Defendants are in breach of the declared trust duties. As the Court's December 19 decision recognizes, it is for the Court to address and resolve such "threshold questions" without further delay. *See* 12/19/07 Memo Order at 9.

### B. Trustee-Delegates' Refusal to Make the Initial Disclosure Required Per Rule 26(a)(1).

As noted above, Trustee-Delegates have objected to serving any initial disclosures in this action on the ground that this action purportedly involves nothing more than the Court's "review on an administrative record." *See* Federal Rule 26(a)(1)(E)(i) and Local Rule 16.3(b)(1). Trustee-Delegates made this objection at the parties' Rule 26(f) conference and

---

[7] Indeed, Defendants' counsel described it as "the government's core position that *the Interior Department is committed to and will complete the accounting required by law*." 6/6/07 Hearing Tr. at 39 (emphasis added).

US2000 10561914.1

in the Joint Report filed with the Court eight months ago, thereby relieving both parties from the obligation of serving initial disclosures.  *See* Federal Rule 26(a)(1).  Under Federal Rule 26, it is now for the Court to "rul[e] on the objection and determine what disclosures, if any, are to be made, and set the time for disclosure."  *Id*.

The Court should overrule Trustee-Delegates' objection and direct the parties to serve initial disclosures within 30 days.  As the Advisory Committee note to Federal Rule 26(a)(1)(E)(i) exempting actions for review of an administration record explain, the exemption of an action for review of an administrative record . . . is intended to reach a proceeding that is ***framed as an 'appeal'*** based solely on an administrative record."  Federal Rule 26(a)(1) Advisory Committees' Note (2000) (emphasis added); 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 26.26[2] (3d ed. 1999).

It is for the plaintiff tribes, not Trustee-Delegates, to state the cause of action for which they seek relief.  The Nation's claim is not framed as an appeal but is *expressly pleaded* as an action under 28 U.S.C. § 1331 to enforce federal statutory trust responsibilities, both express and implied against Trustee-Delegates owing substantial fiduciary duties to the Nation.  *See* Complaint at ¶ 9.  As such, the Nation's action for an equitable accounting of its trust assets including trust funds presents a federal question over which the Court clearly has subject-matter jurisdiction under Section 1331 – quite apart from the APA.

Nevertheless, Trustee-Delegates have ignored the contents of the Nation's pleadings in this matter in attempting to characterize this case as an APA matter in which the court's jurisdiction has been "invok[ed] . . . under the Administrative Procedure Act (APA), 5 U.S.C. §§ 500-706 . . . among other statutes."  *See* Joint Report at Section B.2.  This is not

14

correct.  The APA provision invoked by the Nation as support for the breach of trust claim asserted under 28 U.S.C. § 1331 is Section 702 – which waives federal officials' sovereign immunity for actions (like this one) "seeking relief other than money damages" against federal officials' unlawful acts or omissions.  5 U.S.C. § 702.  *See Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (holding that § 702 "was intended to eliminate the defense of sovereign immunity with respect to any action in a Court of the United States seeking relief other than money damages").  It is well settled than an APA waiver of sovereign immunity is *not* limited to APA claims, as "[t]he APA's waiver of sovereign immunity *applies to any suit whether under the APA or not*."  *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (emphasis added).  *See also Cobell VI*, 240 F.3d at 1094 ("Insofar as plaintiffs seek specific injunctive relief and declaratory relief – and, in particular, seek the accounting to which they are entitled – the government has waived its sovereign immunity under the provisions").

As such, Federal Rule 26(a)(1)(E)(i) does not apply as this is not an APA administrative review case.  The Parties should be ordered to serve all of the initial disclosures in this case that are required under Rule 26(a)(1).  *See* Updated CMO at Paragraph 2(b).

### C.    Additional Case Management Issues.

For the Updated CMO proposed by the Nation to work effectively and without encountering further delay, the following issues also should be addressed and decided at this stage:

### 1.    *Lifting The Presumptive Limitations On Pre-Trial Discovery (Interrogatories And Deposition Limits).*

15

It is Trustee-Delegates that have the information relating to trust management to which tribal plaintiffs have far too long been denied access. They also have a duty to furnish trust data that exceeds these parameters of discovery per the FRCP. All such limits were removed in 1996 in the *Cobell* litigation. The same should happen here.

### 2.    Addressing the Issue of Document Preservation.

Quite apart from Trustee-Delegates' obligation to preserve information and documents relevant to the pending litigation, there is an even broader duty under trust law principles for Trustee-Delegates to preserve records relating to trust administration. *See, e.g.*, *Pueblo of San Ildenfonso v. United States*, 35 Fed. Cl. 777, 788 (1996) ("It is well settled that a trustee such as defendant is under a duty to keep and render clear and accurate accounts with respect to administration of the trust").

Nevertheless, there are numerous examples of the government's mishandling of Indian trust records in cases pending before this Court and the Court of Federal Claims. This has included repeated and widespread destruction of documents in the *Cobell* litigation. *See, e.g., Cobell v. Norton*, 224 F.R.D. 1, 4 (D.D.C. 2004) (noting the then-Special Master's filing of "dozens of reports documenting a myriad of disturbing (and undisputed) findings with respect to the lack of care with which trust information was being safeguarded"); *Cobell v. Norton*, 240 F.3d 1081, 1093 (D.C. 2001) (noting the "egregious" nature of destruction of documents and the government's failure to report that destruction to the Court in a timely manner); *Cobell v. Babbitt* ("*Cobell V*"), 91 F. Supp.2d 1, 60 (D.D.C. 1999) (acknowledging the Special Master's report regarding destruction and late notification to the court regarding 162 boxes of potentially relevant Treasury Department filings). *See also Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004) (concluding that "the failures evidenced in

*Cobell* appear to be so pervasive and systematic as to provide ample support for the issuance of a document preservation order in this case").

The preservation of such trust materials is an absolute essential prerequisite for this Court to ensure the integrity of these proceedings.  Trust documents that Defendants appear to have had a penchant for destroying are the essential lifeblood of the trust – without which there is no accountability.  Accordingly, now that the July 2 stay has been lifted the Nation anticipates moving for the entry of a document preservation order.  (*See* Paragraph 5 of the Updated CMO directing that such a motion be filed within 30 days).

The Nation further proposes that the Court consider whether such a preservation order should be entered in all 37 of the tribal trust cases currently pending before this Court.  As its recent consolidation of these cases for purposes of consideration of Defendants' remand request reflects, the Court clearly has the discretion under Federal Rule 42 to proceed in such a fashion.  And adopting a single form of preservation order for all 37 cases would not only mitigate the risk of further loss of irreplaceable trust records in these matters, but also reduce the burden imposed on Trustee-Delegates with respect to compliance and enforcement of the order's terms.

The Updated CMO thus directs the parties to address the consolidation issue when briefing the document preservation issue in connection with the Nation's to-be-filed motion. *See* paragraph 5.

> **3.      *Entering A Protective Order To Prevent Trustee-Delegates' Delays In The Production Of Trust Data*.**

To ensure that disclosures required per the CMO and Phase I discovery are not delayed over purported "confidentiality" concerns, the Nation proposes that the parties be

US2000 10561914.1

directed to confer immediately regarding the provisions of a proposed Protective Order to be entered in this case pursuant to FRCP 26(c).  Per Paragraph 5 of the Updated CMO, counsel would be required within 15 days of the entry of the CMO to advise the Court whether they have reached agreement with respect to the terms of such a Protective Order.  With respect to any provisions where differences then remain, counsel are to submit memoranda addressing any such differences and proposing how they might be appropriately resolved without delaying the disclosures required under Paragraphs 2(a) and 2(b) of the Updated CMO.

In other trust mismanagement litigation pending in the Court of Federal Claims (*Ak-Chin Indian Community v. United States,* No. 06 CV 00932-ECH (Fed. Cl.), Judge Emily Hewitt imposed similar requirements and deadlines on counsel for the parties with respect to the negotiation of the form of protective order to be entered in that CFC case.  The approach was successful – counsel for the parties reported that they had reached an agreement with respect to all but two provisions of the form of protective order thereafter presented for the Court's consideration and entry.  And following a telephone conference on July 18, 2007, in which counsel addressed their differences and how to resolve them, a protective order was entered by the Court the very next day.

The Protective Order issued in the Ak-Chin CFC case is attached as Exhibit "B."  To facilitate discovery in this case, the Nation would be willing to accept a similar form, with certain important modifications, of protective order for use here.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff-Beneficiary, the Tohono O'odham Nation, respectfully requests the Court's adoption of the Revised Case Management and Phase I Scheduling    Order    submitted    together    with    this    Status    Report.

18

KILPATRICK STOCKTON LLP


/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
Tohono O'odham Nation

US2000 10561914.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE TOHONO O'ODHAM NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-02236-JR |
| | ) | Judge James Robertson |
| DIRK KEMPTHORNE, ROSS O. | ) | **(Electronically filed on January 18, 2008)** |
| SWIMMER and HENRY M. | ) | |
| PAULSON, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing PLAINTIFF'S STATUS REPORT was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Kevin J. Larsen, Esq.
United States Department of Justice
Environmental and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663

John H. Martin, Esq.
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
1961 Stout Street, Eighth Floor
Denver, CO 80294

This 18th day of January, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com

KILPATRICK STOCKTON LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
Tohono O'odham Nation

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE TOHONO O'ODHAM NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-02236-JR |
| | ) | Judge James Robertson |
| DIRK KEMPTHORNE, ROSS O. | ) | |
| SWIMMER and HENRY M. | ) | |
| PAULSON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REVISED PROPOSED CASE MANAGEMENT AND
PHASE ONE SCHEDULING ORDER**

Upon review of the information contained in the Parties' Joint Report Pursuant to

Fed.R.Civ.P. 26(f) and Local Civil Rule 16.3, and the Status Report submitted by Plaintiffs

in accordance with the Court's Memorandum Order dated December 19, 2007, the Court

orders as follows:

1.    Bifurcation:  This action will be divided into two phases:  (1) Declaratory

Relief; and (2) Accounting Trial & Remedies.

(a)    *Declaratory Relief* – Phase I will address and resolve Plaintiffs' requests for

declaratory relief set forth in Count One of the Complaint.  *See* Complaint at ¶¶ 32-39.  In

prior proceedings in this litigation, Defendants have admitted that they owe a duty to account

with respect to the property held in trust for the benefit of the plaintiff tribes.  Nevertheless, a

number of other issues remain to be addressed, including the Court's determinations

regarding the nature and scope of Defendants' fiduciary duty to account and whether

Defendants are in breach of this trust duty. In addition, Plaintiff seeks the declaration of this Court that the Arthur Andersen report prepared by Defendants' contractors does not constitute in any respect the complete, accurate and adequate accounting required under federal law. *See* Complaint at ¶ 38. The parties must file dispositive motions no later than 45 days after the conclusion of Phase I discovery (*see* Paragraph 2(c)). In the event issues of material fact remain regarding Phase I issues, a pretrial conference will be held and a trial will be specially set to occur no later than January 2009.

(b)      *Accounting Trial & Remedies* -  Should the Court rule in favor of Plaintiff on Phase I issues, within 30 days of such a ruling, the Court will issue a further scheduling order governing the Phase II proceedings. Although the details of the further order will not need to be determined until after Phase I, it is anticipated that the "Accounting Trial & Remedies" phase, which will also entail factual and expert discovery, would require an additional 12-month period to be completed. At the Accounting Trial, Defendants will present their proofs reflecting the steps taken to accomplish the court-declared duty to account. Plaintiff then will be permitted to except to Defendants' evidence and make any other appropriate objections including on admissibility. The Accounting Trial findings will serve as proper basis for the Court to determine whether the Plaintiff's account balances are accurately stated or need adjustment. The question of whether other equitable relief might be necessary also would be addressed in that same Trial.

2.      Discovery:  In light of the nature of this action, the presumptive limits on written and oral discovery imposed by the Federal Rules do not apply.

(a)      *Required Disclosures* - In response to allegations in the Complaint that Defendants have breached their trust duty to account for Plaintiff's trust funds and assets,

US2000 10563766.1

Defendants make reference to "financial and accounting data and documentation," "statements of account" and other "trust account information" they claim to have furnished to Plaintiff.  *See* Answer at ¶¶ 2, 3, 5, 21, 30, 34, 36, 37, 38.  Defendants shall produce any and all such referenced materials within 30 days of this Order and specify at that same time which of the produced items (if any) Defendants contend constitutes a complete and accurate accounting of trust assets belonging to Plaintiff.  Defendants shall include in this production all workpapers and other background source documents related thereto.

(b)    *Disclosures to be Made Per Rule 26(a)(1)* – The Court overrules Defendants' objection to serving other initial disclosures required under Rule 26(a)(1) of the Federal Rules of Civil Procedure.  Contrary to what Defendants contend, this litigation is not exempted from such disclosures as a matter involving the Court's "review on an administrative record."  The parties are therefore to make their respective Rule 26(a)(1) disclosures within 30 days of the Order.

(c)    *Phase I Discovery* - All Phase I fact discovery must be completed within 90 days of Defendants' required disclosures made pursuant to Paragraph 2 (a).  Plaintiff must make its expert disclosures pursuant to Federal Rule 26(a)(2) by the close of Phase I fact discovery, and Defendants have 30 days from Plaintiff's disclosures within which to submit their expert disclosures pursuant to Federal Rule 26(a)(2)(B).  The parties shall have an additional 30 days within which to complete the Phase I discovery concerning such disclosures, including the depositions of the parties' experts.

(d)    *Phase II Discovery* - As noted in Paragraph 1(b), a separate scheduling order will issue in the event of a ruling in Plaintiff's favor at the completion of Phase I.  This later scheduling order will establish the dates for the parties' completion of any further discovery

3

related to Phase II issues.   Deadlines for the disclosure of experts' reports, expert depositions, and the dates of the final pre-trial conference and the Accounting Trial also will be established at that time.

3.    Dispositive Motions:  All dispositive motions must be filed no later than 45 days of the conclusion of Phase I discovery.  Parties will be given 30 days to respond to such motions, and the movant thereafter allowed 15 days in which to submit a reply.

4.    Protective Order:  The parties are directed to confer regarding the provisions of a proposed Protective Order to be entered in this case pursuant to FRCP 26(c) so as to facilitate Defendants' timely production of any assertedly confidential trust information. Within 15 days of the entry of this Order, counsel are to advise the Court whether they have reached agreement with respect to the terms of such a Protective Order.  With respect to any provisions where differences remain, counsel are directed to submit memoranda addressing their differences and proposing how they might appropriately be resolved without delaying Defendants' disclosures required under Paragraphs 2(a) and 2(b) of this Order.

5.    Document Preservation:  Plaintiff proposes the entry of a single form of Document Preservation Order for use in this case and some or all of the other tribal trust cases pending before the Court.  Plaintiff's motion requesting such relief is to be filed within 30 days of this order.  Further, the parties' briefing of the document preservation issue shall also address the question whether the Court should exercise its discretion to consolidate all 37 of the pending tribal accounting claims for purposes of this issue.


SO ORDERED this _____ day of _____, 2008.

4

_____
Hon. James Robertson
UNITED STATES DISTRICT JUDGE

US2000 10563766.1

**EXHIBIT B**

# In the United States Court of Federal Claims

No. 06-932 L

(E-Filed: July 19, 2007)

|  |  |
|---|---|
| AK-CHIN INDIAN COMMUNITY, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

PROTECTIVE ORDER

The parties requested the court to enter a protective order and provided a proposed form of order on July 13, 2007. Based on the parties' proposed form of the order and further to discussions held telephonically on July 18, 2007, the court GRANTS the parties' motion to the extent consistent with the following and ORDERS as follows:

1.  All materials and information provided by defendant to plaintiff or its representatives in response to pre-trial discovery, the court's production orders or the initial disclosures required by Rules of the Court of Federal Claims (RCFC) 26(a)(1) in this action (Produced Material) shall be subject to the terms of this Protective Order.

2.  Any Produced Material which contains Confidential Information, as described in the second and third sentences of this paragraph 2, shall be marked by defendant with the endorsement "CONFIDENTIAL MATERIALS--DO NOT DISCLOSE." Produced Material will be so designated if it contains trade secret, confidential, proprietary or commercially sensitive information within the scope of RCFC 26(c)(7). Confidential Information entitled to protection under this Protective Order shall include, but is not limited to, information protected by the Privacy Act, 5 U.S.C. § 552a; "privileged proprietary information" as defined by 25 U.S.C. § 2103(c) enacted as part of the Indian Mineral Development Act of 1982; information concerning the nature and location of archeological resources within

the meaning of 16 U.S.C. § 470hh of the Archeological Resources Protection Act
of 1979; information about the location, character or ownership of historical sites
within the meaning of 16 U.S.C. § 470w-3(a) of the Natural Historic Preservation
Act of 1966; information which concerns or relates to trade secrets or confidential
statistical or financial data within the meaning of 18 U.S.C. § 1905; and other
confidential, proprietary or commercially sensitive information, including but not
limited to financial information of Individual Indians or other Tribes, within the
scope of RCFC 26(c)(7). The same endorsement shall be placed on any document
or other record prepared on behalf of plaintiff that incorporates Confidential
Information derived from any Produced Material designated by defendant as
"CONFIDENTIAL MATERIALS--DO NOT DISCLOSE." Produced Material
that contains solely plaintiff's trade secrets, confidential statistical or financial
information, or other confidential information will not be designated by defendant
as Confidential Information and, except as provided in paragraph 4 below, is not
subject to this Protective Order.

3.  Any documents, data or other materials that defendant identifies as potentially
    containing Confidential Information and that defendant makes available to plaintiff
    or its representatives for inspection shall be treated as if it were Confidential
    Information and no copies of any such material shall be made during inspection. If
    images or copies of such inspected materials are thereafter requested by and
    provided to plaintiff, only those images or copies containing Confidential
    Information shall be marked by defendant as "CONFIDENTIAL MATERIALS--
    DO NOT DISCLOSE" and be subject to the provisions of this Protective Order.

4.  Plaintiff and defendant may agree to forego defendant's review to determine the
    confidentiality of the Produced Material, in which case defendant shall endorse
    "CONFIDENTIAL MATERIALS—DO NOT DISCLOSE" on all of the
    documents, data, and other materials before providing them to plaintiff. The
    documents, data, and other materials endorsed in this manner shall be deemed
    Confidential Information and protected as such under this Protective Order. If
    plaintiff intends to file documents, data, or other materials that have been endorsed
    as Confidential Materials with the court as evidence or for any other purpose, it
    shall follow the procedures set forth in this Protective Order. Alternatively,
    plaintiff may request that defendant review the endorsed documents, data, or other
    materials to determine if they contain Confidential Information, redact the
    Confidential Information, and produce a version of the documents, data, or other
    materials, after the necessary redactions, for filing with the court without the
    "CONFIDENTIAL MATERIALS—DO NOT DISCLOSE" endorsement. If

2

plaintiff wishes to use for any other purposes documents, data, or other materials
that have been endorsed as Confidential Materials, plaintiff may request that
defendant review those documents and produce a version of the documents, data or
other materials without the Confidential Materials endorsement. Such documents,
data, or other materials, after either being redacted or determined not to contain
Confidential Information, shall no longer be considered Confidential Materials and
subject to this Protective Order.

5.    Confidential Materials shall be used by plaintiff's counsel and its consultants and
experts (including but not limited to accountants) only for purposes of this
litigation, or as otherwise hereafter may be agreed to by the parties (provided that
no such agreement shall permit disclosure in violation of law or the rights of third
parties) or approved by the court. Plaintiff, plaintiff's counsel, consultants and
experts may disclose or make available Confidential Materials only to their
employees who are currently engaged in work specifically related to this litigation
and only to the extent that those employees need such Confidential Materials in
order to carry out that work. Before any Confidential Materials shall be disclosed
by or on behalf of plaintiff to any person, plaintiff's counsel shall advise the
person of the terms of this Protective Order, the person shall be provided with a
copy of this Protective Order, the person shall personally review the terms of this
Protective Order and shall execute a document containing the following
acknowledgment:

> I understand that I am being given access to Confidential Materials
> containing Confidential Information within the terms of a Protective Order,
> in Ak-Chin Indian Community v. United States, No. 06-932L, (Fed. Cl. July
> 19, 2007), a copy of which has been provided to me. I have read the
> Protective Order and agree to be bound by its terms.

The executed acknowledgments shall be maintained by plaintiff's attorney of
record. Counsel for the parties shall be deemed to have executed the foregoing
acknowledgment. The court, court personnel and court reporters shall have access
to Confidential Materials without further action. Counsel for the parties shall
advise court reporters at depositions of the applicable terms of this Protective
Order.

6.    If plaintiff disputes defendant's assertion and designation that Produced Material
contains Confidential Information, plaintiff shall notify defendant in writing and
state the grounds for disputing defendant's assertion and designation of

3

Confidential Materials. Within 21 days of defendant's receipt of plaintiff's written notification, the parties shall discuss and attempt to resolve the dispute. If the parties do not resolve the dispute within 21 days (unless extended by agreement), the parties, by turns, beginning with plaintiff, shall promptly (that is, within seven days unless otherwise agreed or ordered by the court), file a motion to seek a ruling from the court regarding defendant's assertion and designation of Confidential Materials.

7.  Confidential Materials shall be filed under seal by the Clerk of the Court if such materials are filed into the court record as evidence or exhibits or for any other purpose. The parties shall not file with the court at any time any pretrial motion, brief, pleading, or other filing in this case, quoting or paraphrasing Confidential Materials or containing Confidential Information obtained from Confidential Materials, unless the portion of the motion, brief, pleading, or other filing is filed under seal with the Clerk of the Court. All materials filed under seal shall be filed in accordance with General Order No. 42A of the Court of Federal Claims, Nov. 4, 2004, and other court rules, policies, and orders applicable at the time of filing. If Confidential Materials or Confidential Information shall be discussed at any deposition, defendant shall, upon receipt of the transcript of such deposition, promptly designate the pages containing that information and those pages shall be marked with the "CONFIDENTIAL MATERIALS – DO NOT DISCLOSE" endorsement .

8.  All individuals to whom Confidential Materials are disclosed shall return to counsel for defendant or destroy all Confidential Materials in their possession immediately upon the termination of this litigation (including the resolution of any applicable appeals) or the termination of any related administrative proceedings before the Department of the Interior, whichever occurs later. In furtherance of the foregoing, plaintiff's counsel shall provide defendant's counsel with copies of the acknowledgments executed pursuant to paragraph 5. If an individual or entity to whom Confidential Materials are disclosed ceases to serve as plaintiff's legal representative, the individual or entity shall immediately return to counsel for plaintiff all Confidential Materials then in his or her or its possession. Individuals or entities returning or destroying Confidential Materials shall provide to defendant's counsel certification in writing that the Confidential Materials have been returned or destroyed. Compliance with the terms of this paragraph 8 is not intended to result in plaintiff being unable to retain copies of documents to the extent that such documents contain information about plaintiff or plaintiff's assets or information about the performance by defendant of its trust responsibilities to

4

plaintiff (collectively plaintiff's documents).  The parties shall cooperate, using the procedures for redaction described in paragraph 4 or other procedures agreed to by the parties or ordered by the court, so that plaintiff may, at the termination of this litigation, retain copies of plaintiff's documents.

9.   This Protective Order shall remain in full force and effect after the termination of this litigation.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

5