IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AK-CHIN INDIAN COMMUNITY<br>v. DIRK KEMPTHORNE, *et al.*, | ) <br> ) <br> ) | No. 06-2245 (JR) |
| PASSAMAQUODDY TRIBE OF MAINE<br>v. DIRK KEMPTHORNE, *et al.*, | ) <br> ) <br> ) | No. 06-2240 (JR) |
| SALT RIVER PIMA-MARICOPA<br>INDIAN COMMUNITY v.<br>DIRK KEMPTHORNE, *et al.*, | ) <br> ) <br> ) <br> ) | No. 06-2241 (JR) |
| TOHONO O'ODHAM NATION<br>v. DIRK KEMPTHORNE, *et al.*, | ) <br> ) <br> ) | No. 06-2236 (JR) <br> **(Electronically filed on February 12, 2008)** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR LEAVE

Trustee-Delegates have moved the Court for leave to respond to the Status Reports filed on January 18, 2008 by the Plaintiff-Beneficiaries in each of these four tribal trust cases. In support of their request, Trustee-Delegates contend that the Status Reports submitted by Plaintiff-Beneficiaries in accordance with the Court's December 19, 2007 order address case management and scheduling issues "about which Defendants were not consulted or informed prior to filing . . . ." *See* Trustee-Delegates' Mo. for Leave at p. 3.

First and foremost, Trustee-Delegates are hardly in a position to complain about this Court's decision to request such Status Reports *only* from Plaintiff-Beneficiaries. After all, it is Defendants that have already delayed these proceedings for more than eight months with their meritless "remand motion."

Beginning in April of last year, Plaintiff-Beneficiaries asked to proceed down the track of litigating these cases, with the parties making Federal Rules-required Joint Reports and other disclosures. Defendants resisted, and claimed that Federal Rule 26(f) and Local Rule 16.3 did

not even apply to this litigation. Instead, they advocated a six-month hiatus to develop a "plan" to provide an accounting. Now, in an extraordinary about-face, Trustee-Delegates point to these very same Rules that they have long contended do not apply to this case – Federal Rule 26(f) and Local Rule 16.3 – as the basis for providing them yet another opportunity to advocate for an alternative path.

What is more, it is simply inaccurate to suggest that Trustee-Delegates were not consulted or informed prior to Plaintiff-Beneficiaries' January 18 filings. As the Status Reports make clear, the Updated CMO's proposed for the Court's entry in each of these cases reflect an approach to case management and scheduling that Plaintiff-Beneficiaries outlined and fully explained to Trustee-Delegates on three separate occasions prior to the temporary stay of July 2, 2007 that the Court has now lifted. Contrary to what Trustee-Delegates now contend, they have been given ample opportunity to comment on these subjects. Defendants have delayed these proceedings long enough. There is no reason to provide them yet another opportunity to do so. Accordingly, Trustee-Delegates' motions for leave in these four cases should be denied.

    **A.    Trustee-Delegates Have Been Fully Apprised of Plaintiff-Beneficiaries' Approach to Case Management and Scheduling Issues.**

Contrary to what their motions for leave incorrectly state, Trustee-Delegates have not been denied the opportunity to comment on the approach to case management and scheduling issues outlined in Plaintiff-Beneficiaries' January 18 Status Reports and reflected in the Updated CMO's proposed for the Court's adoption in these cases. Indeed, the same approach to these issues has been presented and fully explained to Trustee-Delegates on each of the following occasions:

    1.    <u>The Initial Presentation of Plaintiff-Beneficiary's CMO During the Three-Hour Meeting of Counsel on April 11, 2007</u> – The first 90 minutes of this Rule 26(f) conference was

2

devoted entirely to presentation of Plaintiff-Beneficiaries' case management concepts. Trustee-Delegates' attendees included ten government attorneys drawn from the Departments of Justice, Interior and Treasury. *See* "Plaintiffs' Introductory Statement" (at pp. 1-2) of the Joint Report thereafter filed in each of these four cases.

Then, as now, Plaintiff-Beneficiaries proposed that each of these cases be bifurcated, and that the Phase I ("Declaratory Relief") proceedings allow for six months of fact and expert discovery to be followed by the filing of dispositive motions. Consistent with what the Updated CMO's now before the Court provide, Trustee-Delegates were advised that the scheduling of such motions at the conclusion of Phase I activities would permit the Court to address and decide key threshold issues in less than a year's time.

Then, as now, the scheduling of Phase II ("Accounting Trial & Remedies") activities was proposed to await the outcome of Phase I. But Trustee-Delegates were advised that the Phase II proceedings contemplated by Plaintiff-Beneficiaries would include an evidentiary hearing conducted for the purpose of allowing the Court to examine what Trustee-Delegates had done or would be doing to rectify their declared breaches of trust duty.

In short, the same approach to case management and scheduling that is incorporated in the Updated CMO's now before the Court was presented to Trustee-Delegates' counsel in the parties' initial meeting in these cases ten months ago – just as Federal Rule 26(f) and Local Rule 16.3 prescribed.

  2. <u>The Further Presentation of Plaintiff-Beneficiaries' Case Management Plan in the Joint Reports Filed in May 2007</u> – Subject to minor modifications made in response to concerns that had been raised by Trustee-Delegates' counsel during the Rule 26(f) conference, Plaintiff-Beneficiaries' approach to case management and scheduling issues was reiterated in each of the

3

four Joint Reports filed by counsel for the parties in these cases. Each of the key elements of Plaintiff-Beneficiaries' proposed CMO and scheduling order was outlined and explained in detail in the parties' joint submission of nine months ago. *See, e.g.,* the Status Report filed in the Salt River case at 9-10 ("Plaintiff-Beneficiary's Proposed Case Management Plan"); 16-17 ("Plaintiff's Position" regarding discovery); 28-30 and 32-33 (further elaborating on key CMO and discovery points). Plaintiff-Beneficiaries also submitted a proposed form of case management and scheduling order for each case, urging that their equitable accounting claims be litigated in two phases just as Plaintiff-Beneficiaries had proposed to Defendants' counsel during the Rule 26(f) conference the preceding month. *See* the Joint Report at 37; *and* the "Plaintiffs' Proposed Case Management Plan and Phase One Scheduling Order" also submitted to the Court in May 2007.

Comparing what Plaintiff-Beneficiaries presented nine months ago with their Updated CMO's in these cases, it is clear that Plaintiff-Beneficiaries' overall approach to case management and scheduling remains the same. Indeed, the first three paragraphs of the Updated CMO's are virtually unchanged from what Plaintiff-Beneficiaries proposed in May 2007.

To be sure, Paragraph 1(a) of the Updated CMO has been amended to reflect Trustee-Delegates' admission that an accounting duty is owed the plaintiff tribes – something that Defendants had not acknowledged as of the date of Plaintiff-Beneficiaries' earlier CMO. *See* 6/6/07 Hearing Tr. at 39 (wherein defendants' counsel acknowledged the existence of such a trust duty and "[t]he government's core position that the Interior Department is committed to and will complete the accounting required by law"). However, the fact that this threshold issue has been resolved in no way diminishes the need for other key questions to be addressed by the Court during the "Declaratory Relief" phase of this litigation. Consequently, the Updated

US2000 10604443.1

CMO's proposed by Plaintiff-Beneficiaries continue to contemplate the filing of dispositive motions presenting a number of critically important Phase I issues to be decided by the Court during Phase I – including the nature and scope of Trustee-Delegates' accounting obligation and whether Defendants are in breach of such trust duties. *See* Updated CMO's at ¶ 1(a). This approach is fully consistent with this Court's December 19, 2007 decision recognizing that it is the Court's obligation to address and decide such "threshold questions" without further delay. *See* 12/19/07 Memorandum Order at 7-9.[1]

3.   The Presentation of Plaintiff-Beneficiaries' Case Management Approach During the June 6, 2007 Status Conference Conducted by the Court in These Four Cases – Once again, Plaintiff-Beneficiaries' approach to case management and scheduling issues was addressed in detail during this Court hearing. *See* 6/6/07 Hearing Tr. at pp. 12-15. Urging the Court's adoption of bifurcation, Plaintiffs' counsel emphasized during the June 6, 2007 status conference that such an approach would permit threshold questions of Trustee-Delegates' duty and breach to be promptly addressed. *See* 6/6/07 Hearing Tr. at 14 ("[W]e are talking about a phase one

---

[1] As noted in each of the January 18 Status Reports, the Updated CMO's also include (1) proposed schedules for resolving protective order and document preservation issues (*see* Updated CMO's at ¶¶ 4-5); and (2) the overruling of Trustee-Delegates' objections to making the initial disclosures in each of these cases (*see* Updated CMO's at ¶ 2(b)). The proposed time-tables for addressing protective order and document preservation issues decide nothing. Rather, the Updated CMO's merely establish a framework in each case for addressing such issues; and Trustee-Delegates will have an opportunity to present their positions per the schedules proposed in ¶¶ 4-5. As for the overruling of Defendants' exemption argument, this was not addressed in Plaintiffs' earlier CMO's because the deadline for such disclosures had not arrived as of the date of the parties' Joint Report submissions nine months ago. The deadline for disclosure has since come and gone, and Trustee-Delegates continue to withhold trust information and records on grounds that Plaintiffs' equitable accounting claims are nothing more than run-of-the-mill APA cases involving "review on an administrative record." Because their view of Plaintiffs' claims was clearly repudiated by the Court on December 19, 2007, the Updated CMO's would require that these long-overdue disclosures be made within 30 days. (*See* ¶ 2(b)).

5

proceeding if the Court adopts the plan that would allow us to be through this first portion of our clients' claims within a year's time.")

Government counsel argued in turn that the schedule for Phase I proceedings proposed by Plaintiff-Beneficiaries might be too "short" a time period to allow the Court to make such critical determinations. *See* 6/6/07 Hearing Tr. at 38. Thus, while the parties disagreed on such scheduling matters, the transcript of the June 6, 2007 status conference in these cases makes it abundantly clear that Trustee-Delegates were well acquainted with Plaintiffs' case management and scheduling proposals and given a full and fair opportunity by the Court to present their contrary views.

Trustee-Delegates therefore have no legitimate basis for claiming eight months later that they have never been "consulted or informed" about these matters. That they disagree with certain elements of Plaintiff-Beneficiaries' case management approach is a matter of record. *See* Joint Report at 18-190, 30-32 and 34; ***and*** the 6/6/07 Hearing Tr. at 38-39. But Trustee-Delegates are clearly wrong when they claim to have been deprived of any meaningful opportunity to review or comment on the approach to case management and scheduling issues outlined in Plaintiff-Beneficiaries' January 18 filings.

This Court chose in its December 19 order denying Defendants' motion for remand to provide Plaintiffs the opportunity to provide Status Reports. Trustee-Delegates apparently are unhappy with this Court's refusal to give them yet another opportunity to put forth yet another means of approaching this litigation. But the Court's decision in this regard is well-justified, inasmuch as this Court has already indulged Defendants over the last eight months by entering a stay of the proceedings during the parties' briefing of the remand issue. Trustee-Delegates have

6

had their say.  This Court need not provide them yet another bite at the apple.  Accordingly, Defendants' motions for leave should be summarily denied.

> **B.** **Trustee-Delegates' Continuing Refusal to Recognize Federal Rules 26(f) and Local Rule 16.3 as Governing These Cases Precludes Their Attempt to Claim a Right of Further Response Based on Either of These Rules.**

We note at the outset of this section that the Court never suggested in its December 19 order that the Status Reports to be filed by Plaintiffs would be subject to the requirements of Federal Rule 26(f) or Local Rule 16.3.  The *joint* submissions of the parties required by those Rules were made in these cases nine months ago.  It thus is not clear why Defendants believe Federal Rule 26(f) and Local Rule 16.3 have any application here at all.  The Court has asked for Status Reports from Plaintiff-Beneficiaries in each of these cases, and those Reports have been provided.  Defendants have no right to complain about Plaintiffs' submissions made in accordance with the Court's order.

The denial of Trustee-Delegates' February 1 motions is also warranted for an altogether different reason.  Although this glaring inconsistency is nowhere acknowledged in Trustee-Delegates' motions for leave, Defendants have consistently contended previously that Federal Rule 26(f) and Local Rule 16.3 – the *same* Rules that they are now claiming authorize their eleventh-hour requests for leave of Court – do *not* even apply in these cases.  Indeed, it has been Trustee-Delegates' stated position since April 2007 that Plaintiffs' equitable accounting claims are exempted altogether from compliance with Federal Rule 26(f) and Local Rule 16.3 as involving nothing more than the Court's APA-type "review on an administrative record."  *See* Joint Report at 1-4 and 6-9.

By choosing to mischaracterize plaintiffs' claims in this fashion, Trustee-Delegates have avoided making even the most rudimentary disclosures of trust information and documents in

7

these four cases. As a consequence, even after more than 13 months of litigation virtually no information responsive to Plaintiffs' equitable accounting claims has been provided.[2]

Trustee-Delegates' motions for leave offer no hint of any change in their position on this issue. Certainly they have not communicated any intention to make the initial disclosures that should have been accomplished eight months ago in accordance with the Federal Rule 26(a)(1). And yet, in asserting that they should be allowed to further address long-standing case management and scheduling issues even though the Court's December 19 order gave them no such right, Trustee-Delegates are claiming reliance on Federal Rule 26(f) and Local Rule 16.3 – the *very* Rules they have contended for the past ten months have no application here.[3]

Trustee-Delegates cannot have it both ways. Under such circumstances, it would be grossly unfair and prejudicial to permit Trustee-Delegates to exercise rights under Federal Rule 26(f) and Local Rule 16.3 when they have stubbornly refused to acknowledge that either of these Rules even applies. Accordingly, the position they have previously taken on this issue should have consequences. Until such time as Trustee-Delegates have acknowledged that they are bound by FRCP 26 and accomplished the initial disclosures that were due eight months ago, their

---

[2] For Plaintiff-Beneficiary Ak-Chin Indian Community ("the Community"), the impact of Trustee-Delegates' continuing failure to furnish even the most rudimentary trust information has been particularly severe. *See* the Community's January 18 Status Report at pp. 1-9. The Community therefore has requested the Court's immediate intervention and its "hands-on" supervision of Trustee-Delegates' production of trust records that have been repeatedly promised but never supplied. *See* the Community's Updated CMO at ¶ 6.

[3] As noted above, Trustee-Delegates' claimed reliance on these Rules is entirely misplaced. While Federal Rule 26(f) and Local Rule 16.3 require counsel for the parties to confer regarding case management and scheduling issues shortly after responsive pleadings have been filed and before Joint Reports are made, neither Rule imposes any sort of continuing duty to consult with opposing counsel before complying with a later order directing that case management and scheduling proposals be submitted. *See* 12/19/07 Memo. Order at 12. And the Court clearly has broad authority under Federal Rule 16 to order that one side (but not the other) make such a submission – particularly when Trustee-Delegates have previously been afforded an opportunity to review and comment on Plaintiff-Beneficiaries' approach to case management and scheduling issues on three different occasions.

8

shameless attempt to use Federal Rule 26(f) and Local Rule 16.3 to their advantage should be rejected out-of-hand. Otherwise, Trustee-Delegates will only be encouraged to persist in their effort to thwart meaningful progress in these tribal trust cases by claiming an APA-based exemption from FRCP requirements that is fundamentally at odds with this Court's December 19, 2007 decision ("these cases, like *Cobell*, sound in equity as well as administrative law") and on-point *Cobell* case precedent. *See Cobell v. Norton*, 226 F.R.D. 67, 92 (D.D.C. 2005) (rejecting Trustee-Delegates' exemption argument as "unfounded" and "unsound").

## CONCLUSION

For all of the foregoing reasons, Plaintiff-Beneficiaries respectfully request that Trustee-Delegates' motions for leave to respond to Plaintiffs' Status Reports and to file revised reports and proposed case management orders pursuant to Rule 26(f) and Local Rule 16.3 be denied.

Respectfully submitted this 12th day of February, 2008.

        /s/ Keith Harper
        KEITH HARPER
        D.C. Bar No. 451956
        E-mail: kharper@kilpatrickstockton.com
        G. WILLIAM AUSTIN
        D.C. Bar No. 478417
        E-mail: baustin@kilpatrickstockton.com
        CATHERINE F. MUNSON
        Georgia Bar No.
        E-mail: cmunson@kilpatrickstockton.com
        KILPATRICK STOCKTON LLP
        607 14th Street, N.W., Suite 900
        Washington, D.C. 20005
        Tel: (202) 508-5800
        Fax: (202) 505-5858

        *Attorneys for Plaintiffs*
        The Ak-Chin Indian Community
        Passamaquoddy Tribe of Maine
        The Salt River Pima-Maricopa Indian
        Community
        Tohono O'odham Nation

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing Plaintiffs' Response to Defendants' Motion for Leave was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

>John H. Martin, Esq.
>Kevin J. Larsen, Esq.
>Laura Maroldy, Esq.
>Kevin E. Regan, Esq.
>Anthony P. Hoang, Esq.
>Natural Resources Section
>Environment and Natural Resources Division
>United States Department of Justice
>P.O. Box 663
>Washington, D.C. 20044-0663

This 12th day of February, 2008.

>/s/ Keith Harper
>KEITH HARPER
>D.C. Bar No. 451956
>E-mail: kharper@kilpatrickstockton.com
>G. WILLIAM AUSTIN
>D.C. Bar No. 478417
>E-mail: baustin@kilpatrickstockton.com
>CATHERINE F. MUNSON
>Georgia Bar No.
>E-mail: cmunson@kilpatrickstockton.com
>KILPATRICK STOCKTON LLP
>607 14th Street, N.W., Suite 900
>Washington, D.C. 20005
>Tel: (202) 508-5800
>Fax: (202) 505-5858
>
>*Attorneys for Plaintiffs*
>The Ak-Chin Indian Community
>Passamaquoddy Tribe of Maine
>The Salt River Pima-Maricopa Indian Community
>Tohono O'odham Nation

US2000 10604443.1