IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Yankton Sioux Tribe v. | ) | Civil Action No. 03-1603 (JR) |
| Kempthorne, *et al.,* | ) | |
| | ) | |
| Pechanga Band of Luiseno Mission Indians v. | ) | Civil Action No. 06-2206 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Colorado River Indian Tribes v. | ) | Civil Action No. 06-2212 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Tohono O'odham Nation v. | ) | Civil Action No. 06-2236 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Nez Perce Tribe, *et al.*, v. | ) | Civil Action No. 06-2239 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Passamaquoddy Tribe of Maine v. | ) | Civil Action No. 06-2240 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Salt River Pima-Maricopa Indian Community v. | ) | Civil Action No. 06-2241 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Ak-Chin Indian Community v. | ) | Civil Action No. 06-2245 (JR) |
| Kempthorne, *et al.*, | ) | |
| _____ | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  Plaintiffs Have Not Identified a Cognizable Non-APA Cause of Action . . . . . . . 1

    A.  <u>Plaintiffs Have Ignored the Primary Requirement of *Mitchell II* and *Sandoval* to Ground the Existence of a Right of Action in a Specific Statutory Prescription</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  <u>The Court May Not Infer that Congress Intended a Private Right of Action Identical To A Common Law Accounting In Light of the Availability and Limits on APA Review of Federal Agency Action</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.  <u>Plaintiffs Have No Colorable Claim for Non-Statutory Review</u> . . . . . . . 11

II.  Plaintiffs' Undue Delay Claim Lacks A Legal Basis in Either the Statutes Cited By Plaintiffs or the APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.  <u>*Cobell VI* Does Not Address the Significance of Section 304 of the 1994 Act or Interior's TRP Reports to Plaintiffs' Claim.</u> . . . . . . . . . 13

    B.  <u>The Court's Ability to Compel Unduly Delayed Agency Action Is Limited to Review of Precise, Definite Nondiscretionary "Agency Actions," Not the All Encompassing Accountings Sought By Plaintiffs</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  Plaintiffs Have Not Sufficiently Specified Their Claims to Withstand a Motion For Judgment on the Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.  Plaintiffs' Claims for Monetary Relief Are Precluded By The Tucker Acts and the APA's Prohibition on Money Damages . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.  The Indian Claims Commission Act Is Not Amended By Appropriations Act Language . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.  Congress Has Established No Accounting Duty Relating to Tribal Non-Monetary Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A.  <u>There is no Fundamental Right to An Accounting of Non-Monetary Assets</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    B.  <u>The Court Should Not Excuse Plaintiffs' Failure to Exhaust Administrative Remedies</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## ARGUMENT

**I.     Plaintiffs Have Not Identified a Cognizable Non-APA Cause of Action.**

Plaintiffs concede that they must base their suits in this Court on a valid cause of action to which the APA has waived the federal government's sovereign immunity. Plaintiffs' Principal Brief In Opposition to Defendants' Motion to Dismiss at 13 (Plfs. Mem.). As Defendants explained in their opening brief, it is well-settled that there are only two principal causes of action for declaratory or injunctive relief against the federal government that may be brought in district court under the waiver of sovereign immunity provided by the APA. The first is for review of government action under the provisions of the APA itself—*i.e.*, review of final agency action or agency action unreasonably delayed. The second is for review of government action under a private right of action created by the statute under which the action was taken. Plaintiffs, who claim that their cause of action is distinct from and in no way dependent upon the APA, and who do not point to a private right of action created by any statute that would authorize this Court to compel the accounting they seek, would have this Court create an Indian trust beneficiary exception to established APA jurisdiction.

Under Plaintiffs' theory, this Indian trust beneficiary exception does not have to be grounded in a statute that "displays an intent to create not just a private right [of action] but also a private remedy," as the Supreme Court held in *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) (*Sandoval*); instead, it "naturally follows" from the "various statutes and regulations that establish the trust relationship between the United States and Plaintiff-Tribes" (Plfs. Mem. at 16). In their view, wherever Congress has created trust duties, it should be presumed, without reliance on the words or intent of any particular statutory text, to have created a private right of action for equitable

- 1 -

enforcement of those duties, and enforcement of those duties should be free of the substantive limitations imposed by the APA, even though neither the text nor the legislative history of the APA speaks to an Indian trust beneficiary exception to its provisions.  They assert, even though the D.C. Circuit has held otherwise, that this Court sits as a Chancellor in Equity when enforcing trust duties, and that the APA has waived the federal government's immunity to whatever suits could have been brought at common law under the rules of equity, and to whatever remedies could have been imposed under those same rules.

Plaintiffs claim to find support for their theory in the Supreme Court's decisions in *United States v. Mitchell*, 463 U.S. 206 (1983) (*Mitchell II*), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) (*White Mountain Apache*).   For at least two reasons, however, these cases do not provide the support that Plaintiffs need for their theory.  First, neither of those cases addressed the issues presented by Plaintiffs' claims here.  Both of those cases addressed the question of whether and when Indian trust beneficiaries can bring claims for damages against the federal government in the United States Court of Federal Claims (CFC) under the waiver of sovereign immunity provided by the Tucker Act and the Indian Tucker Act; they did not address the question presented by Plaintiffs herein of whether and when Indian trust beneficiaries can bring claims for declaratory and injunctive relief against the federal government in district court under the waiver of sovereign immunity provided by the APA.  Second, even if the analysis in those cases had some relevance to Plaintiffs' claims here, the analysis would not support the claims.

A.    **Plaintiffs Have Ignored the Primary Requirement of *Mitchell II* and *Sandoval* to Ground the Existence of a Right of Action in a Specific Statutory Prescription.**

Plaintiffs argue that their cause of action "derives from various statutes and regulations that

establish the trust relationship between the United States and the Plaintiffs" and "naturally follows" from the creation of a trust. Plfs. Mem. at 16-19. Plaintiffs' principal support for this proposition is the Supreme Court's decision in *Mitchell II* and *Apache* and the decision of the D.C. Circuit decision in *Cobell v. Norton*, 240 F. 3d 1081 (D.C. Cir. 2001) (*Cobell VI*). *Id.* at 16. Plaintiffs' reading of these cases and their application to the question presented here is plainly incorrect. Assuming *arguendo* that Plaintiffs' arguments about *Mitchell II* and *White Mountain Apache* are correct (which they are not), the arguments support, at most, the conclusion that Plaintiffs may bring their claims under the Tucker or Indian Tucker Acts in the CFC. Plaintiffs have wholly ignored the controlling precedent and analysis of the Supreme Court in *Sandoval*, 532 U.S. at 286, which describes a more demanding test for determining whether a statute contains a private cause of action cognizable under the APA.[1]

In any event, Plaintiffs ignore the actual analysis of Tucker Act jurisdiction required by *Mitchell II*, *White Mountain Apache* and other Supreme Court decisions applying the Tucker Act to Indian breach of trust claims, including *United States v. Navajo Nation*, 537 U.S. 488 (2003), and *United States v. Mitchell*, 445 U.S. 535 (1980) (*Mitchell I*). *Mitchell II* requires a similar (though less stringent) exercise in statutory construction as *Sandoval*, for "not every claim invoking the Constitution, a federal statute, or regulation is cognizable under the Tucker Act." *Mitchell II*, 463 U.S. at 216. Instead, "the claimant must demonstrate that the source of substantive law (s)he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 216-17 (citations omitted). The threshold showing required under the fair

---

[1] Under that test, the Court is to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. Statutory intent, as expressed in the text and structure of the statute, determines whether a statute may be construed to create a private remedy. *Id.*

interpretation test is an identification of "*specific* rights creating or duty-imposing *statutory or regulatory prescriptions*" that establish the "specific fiduciary or other duties" that the government has allegedly failed to fulfill. *Navajo Nation*, 537 U.S. at 506 (emphasis added). Thus, even in Tucker Act cases involving breach of trust claims, general principles from the common law of trusts cannot serve as a substitute for identifying specific statutory or regulatory prescriptions and duties, and grounding the claim in an alleged breach of those specific duties.

In urging a flawed inquiry into whether a private statutory cause of action exists, Plaintiffs have fundamentally misapplied Supreme Court precedent in arguing that a right of action "naturally follows" from statutes establishing a trust relationship. Plfs. Mem. at 19. This analysis is too simple by half, as it would leave the *Mitchell I* and *Navajo Nation* decisions wrongly decided, insofar as the government had a trust relationship with the Tribes and held the resources at issue in those cases in trust (timber in *Mitchell I* and mineral resources in *Navajo*). Contrary to Plaintiffs' arguments, in both those decisions, the Supreme Court found the specific claims and statutes at issue were <u>not</u> money-mandating, and that general trust law played no role in supplementing the limited obligations established in the relevant statutes at issue in those cases. Indeed, in *White Mountain Apache*, the Supreme Court noted that *Mitchell II* turned on an analysis of how specific "statutes and regulations," not common law principles, "define[d] . . . [the] contours of the United States' fiduciary responsibilities." *White Mountain Apache*, 537 U.S. at 474, citing *Mitchell II* at 224-26. The Court went on to explain that such a "source of law was needed to provide a focus for the trust relationship," in order to "[t]o find a specific duty" owed by the government. *Id.*, at 477.

As the Supreme Court recognized both in *Navajo* and *White Mountain Apache*, the *Mitchell II* decision was careful to ground the duties at issue in specific statutory and regulatory prescriptions.

- 4 -

The *Mitchell II* opinion first examined the "Acts of Congress and executive department regulations" on which the plaintiffs had based their money claims. *Id*. at 219. Each of the plaintiffs' precise claims tracked a specific duty separately set forth in one of the statutes or regulations governing Indian timber management. *Id*. at 210 (describing claims); *id*. at 209, 211, 219-23 *and* FN 23-28 (discussing governmental duties under statutes and regulations on which the claims were predicated). Consequently, the Supreme Court's discussion of those duties focused on the specific obligations imposed by the statutes and regulations at issue and did not invoke common law trust principles to define the applicable duties. *Id*. at 219-23. *Mitchell II*'s discussion of trust principles was, instead, limited to an assessment of whether statutes and regulations that impose specific fiduciary duties may also be fairly interpreted as money-mandating. *Id*. at 224-28.

Plaintiffs attempt to draw a distinction between the common-law claims that they acknowledge are impermissible and "implied statutory dut[ies]" that are supplied by common law, stating that "an action to enforce an implied statutory duty does not present a common law claim." Plfs. Mem. at 22. At least here, Plaintiffs concede that the accounting right they assert is not explicit in any statute (perhaps apart from the provisions of the 1994 Act construed in *Cobell*). Regardless, the distinction they draw between the common law and an implied right is unavailing because, in the end, they propose that this Court supply "judge-made" rules of law abstracted from any statutory basis (an approach rejected in *Cobell v. Norton*, 392 F.3d 461, 471 (D.C. Cir. 2004) (*Cobell XIII*)). Such an approach is impermissible under *Sandoval* and *Mitchell II*. Further, Plaintiffs' argument fails to address the established principles that "common law precedents don't map directly onto the context" of the Indian trusts at issue here and the common law may be used only "to a degree" as a filler of gaps left by a statute. *Cobell v. Norton*, 428 F.3d 1070, 1078 (D.C.

Circuit 2005) (*Cobell XVII*).[7]

The poor fit between common law and the Indian trusts at issue here is illustrated by the accounting that Plaintiffs seek based on what they contend is black letter common law: one detailed "comprehensive accounting" from Defendants that is "all-encompassing" of all assets, including non-monetary assets and funds, and includes a "broad array" of "background records" and "all information reasonably necessary" for Plaintiffs' subjective and individual needs.  Plfs. Mem. at 56-58, 60.  These assertions and principles take no account of the fact that Defendants' obligations for Indian trust resources are contained in a plethora of different statutes that vary in their obligations and commands, depending on the resources or management functions at issue and the time period.[8] Plaintiffs' demand for a unitary and all-encompassing accounting runs counter to the rule that "[a]n Indian tribe cannot force the government to take a specific action unless a treaty, statute or agreement imposes, expressly or by implication, that duty."  *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995).

Plaintiffs' failure to engage with any of the foregoing points cannot be explained away by their reference to *Cobell VI* or *Nat'l Labor Relations Bd. v. Amax Coal Co., Div. of Amax, Inc.,* 453

---

[7]  The power to create federal common law does not authorize a court to substitute its views for those expressed by Congress in a duly enacted statute.  *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978).  "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."  Id.  "[W]hen Congress has legislated on a question that is claimed to be appropriate for the creation of federal common law, courts must assume that Congress has articulated all the governing federal standards."  *Ridenour v. Andrews Federal Credit Union*, 897 F.2d 715, 722 (4th Cir. 1990).

[8]  Plaintiffs' failure to address any specific statute is fatal to their claim against the Secretary of the Treasury.  Plaintiffs' brief fails to either identify any statute that assigns Treasury any obligation to render an accounting as sought by Plaintiffs or take any specific required agency action so as to justify naming the Secretary as a Defendant.

U.S. 322 (1981) (*Amax*).[4]  Neither of those cases addresses whether Plaintiffs have a generally available private cause of action for an accounting or for breach of trust divorced from the government's specific obligations under specific statutes.  *Cobell VI* recognized that the claim in that case was within the Court's jurisdiction, only because it was based on the APA cause of action for unlawfully withheld agency action that Plaintiffs here repeatedly disclaim (at least until it proves necessary to maintain their suit).  240 F.3d at 1095.  Similarly, *Amax* does not lend any insight into the proper standard for identifying statutory causes of action because the section of the Labor Management Relation Act at issue in that case, 29 U.S.C. § 186, contains an express private right of action, whose existence and scope was not at issue in that case.   Just as important, notwithstanding the presumption of fiduciary duties that Plaintiffs derive from *Amax*, the Supreme Court has subsequently decided that the private cause of action contained in 29 U.S.C. § 186 is nonetheless limited to enforcement of the specific obligations of that statute and does not extend to the "violation of the fiduciary duties imposed pursuant to an employee benefit trust fund."  *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 590 (1993).  In other words, the maxim quoted by Plaintiffs from *Amax* provides no basis for the Court to presume a private cause of action for the claims that they assert in these cases.

**B.     The Court May Not Infer that Congress Intended a Private Right of Action Identical to a Common Law Accounting In Light of the Availability and Limits on APA Review of Federal Agency Action.**

*Sandoval* is clear that a court may not assume or infer that it has the same remedial authority

---

[4] Plaintiffs' reference to *Beckett v. Air Line Pilots Ass'n*, 955 F.2d 280 (D.C. Cir. 1993) is unavailing because that decision dealt with the court's jurisdiction over a claim to enforce a consent decree.  The court held that it had jurisdiction "pursuant to the well-established principle that a trial court retains jurisdiction to enforce its consent decrees," and did not address at all the recognition of private causes of action under statutes. *Beckett*, 995 F.2d at 282.

as a common law court. *Sandoval,* 532 U.S. at 287 ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.") (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 365 (1991)). The D.C. Circuit also recognizes that a private right of action must be based on Congress' express statement, and not implied or inferred. *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004) ("In adhering to this view, the Supreme Court has declined to construe statutes to imply a cause of action where Congress has not expressly provided one.") In *Sandoval*, the Supreme Court emphasized that the text and structure of a statute is the place to locate the express Congressional intent necessary to create a private right of action. 532 U.S. at 288. Outside of a general reference to statutes and regulations, Plaintiffs do not point to any single source of law that contains express language providing them with a private right of action in this Court for alleged violations of its provisions. Given Plaintiffs' concession that their asserted right to an accounting is implied, rather than express, in statutes, they cannot argue that Congress has expressly provided the remedial scheme necessary to proceed on Plaintiffs' theory of judicial review.

The recognition of a private right of action is even more disfavored in the circumstances of these cases because such a right of action would necessarily operate only against the federal government and its officers. In *San Carlos Apache Tribe v. United States*, the Ninth Circuit Court of Appeals explained the impropriety of implying a private cause of action against the federal government, where alternative means of ensuring governmental compliance with a federal statutes is presumed available under the APA. *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1095-98 (9th Cir. 2005). In that decision, the Ninth Circuit applied the rule of interpretation that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress

intended to preclude others." *Id.* at 1095 (citing *Sandoval*, 532 U.S. at 290). The Ninth Circuit

emphasized then-Judge Breyer's rationale in a First Circuit decision:

> It is difficult to understand why a court would ever hold that Congress, in enacting
> a statute that creates federal obligations, has implicitly created a private right of
> action against the *federal* government, for there is hardly ever any need for Congress
> to do so. That is because federal action is nearly always reviewable for conformity
> with statutory obligations without any such 'private right of action.'

*San Carlos Apache Tribe*, 417 F.3d at 1095-96 (quoting *NAACP v. Sec'y of HUD*, 817 F.2d 149, 152

(1st Cir. 1987)) (emphasis in original).

Judicial reluctance to read into federal statutes a private right of action against the federal

government is also the prevailing view in this Circuit. *See Godwin v. Sec'y of HUD*, 356 F.3d 310,

312 (D.C. Cir. 2004) (holding that section of the Fair Housing Act confers no right of judicial review

when the Secretary declines to issue a housing discrimination charge). In its decision in *Godwin*,

the D.C. Circuit recognized that, regardless of whether ordinary APA review was available (and, in

that case, it construed the APA to bar review), it was obligated to presume that Congress intended

the APA to provide the remedy for challenges to federal agency action, and that "Congress would

make explicit any intent to create a cause of action in these circumstances." *Godwin*, 356 F.3d at

312. Thus, it is important not only that APA review is the presumptive means for review of federal

agency action, but also that courts should be especially wary of adopting new means of review of

agency action where the APA otherwise limits the availability of judicial review.

A review of the 1994 Act, in particular, demonstrates that Congress has expressed no intent

to create any cause of action against Defendants for breach of trust, or to compel an accounting. In

fact, all the indicators in the 1994 Act point against the implication of a private cause of action in

the district court distinct from the APA. First, the statute in several places, such as Section 304, 25

U.S.C. § 4044, recognizes that Indian Tribes may have disputes with the Department of the Interior ("Interior") regarding its trust funds management. Yet rather than direct those disputes into a federal district court, the 1994 Act directs Interior to develop policies and processes for dispute resolution. *See* 25 U.S.C. §§ 4012 and 4044. Rather than expressing any intent that federal courts should have a special role in enforcing the 1994 Act, Congress created the Office of the Special Trustee for American Indians, and vested that office with the authority to oversee and ensure the implementation of the statute and the required reforms. 25 U.S.C. § 4041 *et seq.* It would be unwarranted to find in those provisions any intent to create a special avenue for federal courts to oversee the Special Trustee (and other Defendants) in the discharge of the Special Trustee's obligations. Most importantly, regarding Interior's accounting for tribal accounts, Section 304 of the 1994 Act, 25 U.S.C. § 4044, directs Interior to submit the results of its tribal accountings to Congress, with special emphasis on "the efforts Interior will undertake to resolve the dispute." 25 U.S.C. § 4044(3). This provision reflects the care Congress took to avoid directing the complex problems of Indian trust administration into judicial oversight, and implies Congressional review of Interior's results under Section 304 before determining whether to create any new rights or remedies.

This Court should adopt the reasoning of the Courts of Appeal in *San Carlos Apache Tribe, Godwin,* and *NAACP*, and focus its inquiry, as required by *Sandoval*, into specific statutory intent, for, without express Congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87. Given the lack of any expression in the 1994 Act to create enforcement mechanisms beyond the oversight role of the new Special Trustee, the Court has no basis to conclude that Congress ever considered, let alone intended, to create any cause of action

against the federal government in the 1994 Act, nor in any of the statutes Plaintiffs cite.

### C.    Plaintiffs Have No Colorable Claim for Non-Statutory Review.

The cases that Plaintiffs cite in support of their request for non-statutory review are inapposite. In *City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979), the D.C. Circuit was faced with a choice of whether to permit judicial review of claimed violations of NEPA, the Communications Act of 1934, and the Federal Aviation Act, solely in the district court, in the court of appeals under the special review procedures of the two latter statutes, or concurrently in both courts. Without examining the theory of non-statutory review in any detail whatsoever, the D.C. Circuit held that the statute directing petitions to the courts of appeal established the exclusive means of obtaining judicial review in that court. *Id*. Plaintiffs' reliance on the *Bond* decision is puzzling because NEPA claims are routinely heard in the district courts under the ordinary APA cause of action and not under any theory of non-statutory review. *Bond* is not an on-point application of non-statutory review that supports Plaintiffs' theory of review.

In *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), the D.C. Circuit traced the history and legal roots of the theory of non-statutory review and noted in each of the relevant prior Supreme Court decisions that review was limited to alleged *ultra vires* challenges. *Reich*, 74 F.3d at 1328. Moreover, by the time that the D.C. Circuit issued its decision in *Reich*, the Secretary of Labor had promulgated final regulations implementing the challenged Presidential action, undercutting any need to further litigate the reviewability of the Executive Order. *Reich*, 74 F.3d at 1327. Plaintiffs' reliance on *Reich* for the proposition that they "may still be able to institute a non-statutory review action," in no way means that they do, as a matter of fact or law, satisfy the requirements for review of *ultra vires* actions set forth in that case. Plfs. Mem. at 23. Plaintiffs'

play on words in asserting that because they "may" institute an action for non-statutory review means that they have satisfied the prerequisites for such review does not satisfy their burden to describe how their claim is one for review of *ultra vires* action.

The D.C. Circuit's decision in *National Ass'n of Postal Supervisors v. United States Postal Service*, 602 F.2d 420, 432 (D.C.Cir. 1979), is likewise unavailing because, like *Reich*, that case focused again on whether the agency had exceeded its delegated authority. *Reich,* 74 F.3d at 1328. In addition, Plaintiffs' quote from the opinion is deceptively selective because it elides the observation, just prior to Plaintiffs' partial quote, that "[t]he existence of a jurisdiction-conferring statute does not alone create a right of action for judicial review of agency action." *National Ass'n of Postal Supervisors,* 602 F.2d at 429. Thus, the presumption of judicial review cannot substitute for the absence of a cause of action for review of agency action. *Id.*

Plaintiffs' reliance on *Five Flags Pipeline Co. v. Dep't of Transportation*, 854 F.2d 1438, 1439 (D.C. Cir. 1988) is inexplicable because that case dealt not with articulating the standards for obtaining non-statutory review, but with the issue of whether the circuit court of appeal was authorized to provide initial judicial review of the agency action. The decision has no applicability to whether Plaintiffs properly state a claim for non-statutory review. Also inexplicable is their reliance on *Jordan v. United Ins. Co.*, 289 F.2d 778, 782-83 (D.C.Cir.1961), as that case does not deal with a claim challenging agency action by the federal government, but addressed a claim against an agency of the District of Columbia government.

Plaintiffs cannot demonstrate that any statutes giving rise to their claim confer a private cause of action for judicial review. Further, Plaintiffs do not seek review of alleged *ultra vires* agency action. Therefore, the APA remains the only avenue by which they can pursue judicial

review.

II.     **Plaintiffs' Undue Delay Claim Lacks A Legal Basis in Either the Statutes Cited By Plaintiffs or the APA**.

      A.     ***Cobell VI* Does Not Address the Significance of Section 304 of the 1994 Act or Interior's TRP Reports to Plaintiffs' Claim**.

Plaintiffs argue, based almost exclusively on the D.C. Circuit's decision in *Cobell VI,* that Section 304 of the 1994 Act has no effect on Defendants' legal obligations to produce the retrospective accounting of trust assets Plaintiffs seek. *Cobell VI* addressed Section 304 only in passing, however, as that section has no bearing on the rights of the individual Indian plaintiffs in that case or Defendants' obligations regarding the individual Indian money (IIM) accounts. Thus, *Cobell VI* had no occasion to examine the rights of Plaintiffs here, who are Indian Tribes, or Defendants' obligations to them. In short, *Cobell VI* had no need to look at the legal effect of Section 304, and cannot be read as a definitive treatment of whether Section 304 embodies and controls any arguable obligations of Defendants to provide an accounting of transactions predating the 1994 Act. Indeed, in pertinent places, *Cobell VI* limits its discussion to "IIM responsibilities" and "duties owed by the government to IIM beneficiaries." *See, e.g., Cobell VI*, 240 F.3d at 1100.

Moreover, Plaintiffs make no effort to address Defendants' statutory construction argument that Section 304 controls Defendants' retrospective accounting and account balance determination obligations. This statutory construction argument was not presented or addressed in *Cobell VI* because it was not relevant to the individual Indian plaintiffs' claims. Indeed, the most salient discussion in *Cobell VI* confirms the relevancy of Section 304. The D.C. Circuit noted that the heart of the accounting that it found to be owed was an obligation to reconcile the IIM accounts, taking into account past deposits, withdrawals, and accruals, all with the aim of determining an accurate

- 13 -

account balance. *Cobell VI*, 240 F. 3d at 1102. Such was the explicit purpose of Section 304 in directing Interior to complete a reconciliation of trust accounts and to report reconciled balances in tribal trust fund accounts.

Plaintiffs' assertion that other provisions of the 1994 Act are broader than Section 304 simply fails to address the government's argument and cited legal authority that Interior's more specific obligations in Section 304 to produce a timely historic account reconciliation controls the more general accounting obligations Plaintiffs see elsewhere in the 1994 Act and other law. *Cobell VI* is not determinative of that question, and the Court should reject Plaintiffs' argument in that regard.

      **B.**     **The Court's Ability to Compel Unduly Delayed Agency Action Is Limited to Review of Precise, Definite Nondiscretionary "Agency Actions," Not the All Encompassing Accountings Sought By Plaintiffs.**

Plaintiffs present an incorrect summary of the Supreme Court's holding in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) (*SUWA*). Plaintiffs assert that *SUWA* holds that a court can compel an agency to comply with statutorily mandated duties, so long as it does not dictate the precise details to the agency. Plfs. Mem. at 29-30. That reading is plainly inconsistent with the Supreme Court's decision that the broad statutory "nonimpairment" mandate of the Federal Land Policy and Management Act was not enforceable against the Interior Department because, even though the statute was mandatory, it lacked the "specificity requisite for agency action." *SUWA*, 542 U.S. at 66.

Plaintiffs ignore their burden under *SUWA* and APA Section 706(1) to describe how the expansive accounting they seek—subsuming literally all agency activities over the life of the trust, as well as a constellation of associated steps and documentation—meets the specificity requirement

elucidated in *SUWA*. In fact, their argument undercuts their claim insofar as they assert that the accounting duty they seek to enforce arises from a host of different statutory sources, and not the 1994 Act. Plfs. Mem. at 32. A "network theory" of different statutory commands converging in a requirement for the one unified accounting that Plaintiffs seek is inherently implausible in light of the discussion in *SUWA* limiting Section 706(1) to the enforcement of specific statutory or regulatory prescriptions that require specific "agency actions," as defined in the APA. Moreover, Defendants' reading of *SUWA* is consistent with Supreme Court precedent pertaining to mandamus in the Indian trust context. *See Wilbur v. U.S. ex rel. Kadrie,* 281 U.S. 206 (1930) (pre-APA request for mandamus against the Secretary of the Interior).

Plaintiffs also oppose Defendants' *SUWA*-based argument because the D.C. Circuit has not independently taken up the issue in *Cobell*. It is of no moment, however, that the D.C. Circuit has not addressed, in the separate case of *Cobell,* the argument that Defendants advance here and now in this tribal trust case. First, Defendants cannot waive or be estopped from raising an argument herein because they have not advanced it in a separate, ongoing case. Different cases may be in different postures affecting the applicability of an argument. Second, a court of appeals is bound to address only the questions and issues that are properly raised before it regarding specific appealable orders. Thus, the fact that the D.C. Circuit has not applied *SUWA* to the accounting required by the *Cobell* decisions is easily explained by the different posture of *Cobell* and the specific questions presented by the final appealable orders at issue (for example, regarding Internet disconnection).

### III.    Plaintiffs Have Not Sufficiently Specified Their Claims to Withstand a Motion For Judgment on the Pleadings.

Plaintiffs claim that they have done all that is required to properly state claims. Further, they

appear to limit their claims to asserting that what they call the "Arthur Andersen reports" are insufficient to satisfy the implied requirement of a complete accounting. However useful that step may be in focusing this case for judicial review, it does not negate Defendants' arguments that a multitude of other allegations in the Complaints do fail to state a claim and, hence, should be dismissed. For example, the Salt River Pima Maricopa Indian Community's Complaint referenced throughout Plaintiffs' Principal Brief seeks not only relief as to the alleged breach of the accounting duty, but also much broader relief "for a decree delineating the fiduciary duties owed by defendants to the Community with respect to the management and administration of trust assets belonging to the Community." Salt River-Pima Maricopa Complaint at 17, Prayer 4. As described by Plaintiffs' counsel, the Community seeks to litigate not just the accounting duty, but also every duty owed by Defendants to the Community. *See Salt River-Pima Maricopa*, 6/06/2007 Hearing Tr. at 10:22 to 11:17 ("We would have the court declare such duties so that everybody understands what this trust relationship actually looks like, which duties apply and which duties don't.") Moreover, Plaintiffs apparently plan to challenge the legality of any or all of Defendants' past actions, as those may be disclosed in any accounting reports put before the Court. Salt River Pima-Maricopa Complaint at 17, Prayer 2. Unlike the cases cited in Plaintiffs' Principal Brief, the claims here have not been broken down into appropriate challenges to discrete agency actions (or inaction), and it is fitting in a motion to dismiss to test the sufficiency of all asserted claims, and leave pending only those that meet all prerequisites for judicial review under the APA and that contain enough factual allegations to rise above a formulaic recitation of the elements of a cause of action.

**IV.    Plaintiffs' Claims for Monetary Relief Are Precluded By the Tucker Acts and the APA's Prohibition on Money Damages.**

Plaintiffs distance their accounting claims from the relief that they assert will inexorably

flow from such accountings (assuming that the cases develop as Plaintiffs propose).  Plaintiffs claim

that issues regarding the propriety of the equitable relief that they seek "are for a later day."  Plfs.

Mem. at 37.  Two Plaintiffs even assert that they do not seek to recover any damages or monetary

relief in this Court at all.  *See* Supplemental Briefs of the Colorado River Indian Tribes and

Pechanga Band of Luiseno Indians.

Plaintiffs' arguments are meritless because the common law accounting that they seek would

determine Defendants' liability for the matters disclosed and hence constitute an impermissible

request for compensatory relief.  Judicial review of any accounting will either establish Defendants'

liability or discharge Defendants from liability as the natural end of the common law accounting

claim that Plaintiffs have advanced.  *See* Restatement 3d Trusts § 83, comment c ("[A] court order

approving all or part of a trustee's accounts discharges the trustee from liability (or further liability)

for matters appropriately disclosed.")  This conclusion is especially apt where the accounting duty

is allegedly implied in a statute otherwise establishing Defendants' management obligations, such

as in 25 U.S.C. §§ 161a and 162a.  The Court's judgment on the claim for breach of the duties found

in such statutes will necessarily determine whether Defendants have complied with all their

obligations under the statute for the actions, acts and events reported in the accounting, with *res

judicata* implications, in any event.  To hold otherwise would be to sanction impermissible claim-

splitting.[5]

Contrary to their assertion, Plaintiffs do not have an election of remedies upon receipt of the

accounting.  Under the same common law that they rely upon, it is in "the very nature of the

---

[5] Of course, questions of jurisdiction might also arise, if Plaintiffs seek to use any judgment issued by this Court in a different Court to collect money damages.  *See Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1327-29, 1332-33 (Fed. Cir. 2004) (Fifth Circuit lacked jurisdiction to issue a declaratory judgment as a predicate to a damages action in the CFC).

remedy" that the accounting establishes the funds and property to which the beneficiary is entitled, with the trustee bearing certain burdens and presumptions in making its accounting. *Rosenak v. Poller*, 290 F.2d 748, 750 (D.C. Cir. 1961).[9] As Defendants discussed in the opening brief, the necessary result of the accounting that Plaintiffs seek would be "to determine the existence and extent of the damages to which [the Plaintiffs were] entitled." *Cape Fox Corp. v. United States*, 646 F.2d 399, 402 (9th Cir. 1981). Plaintiffs acknowledge this in asserting that "to the extent the accounting uncovers that the balances of a Plaintiff-Tribes' trust fund account is misstated, then a correction of that balance would be in order and routine." Plfs. Mem. at 40. This assertion proves Defendants' point that it is not Plaintiffs' description of the claim as equitable that is determinative, but "the substance of the claim" that controls. *Suburban Mortgage Assoc. v. United States Dept. Of Housing and Urban Dev.*, 480 F. 3d 1116, 1124 (Fed. Cir. 2007). Here, the true substance of Plaintiffs' accounting claim is a demand that Defendants pay any monies necessary to correct the balance in Plaintiffs' accounts.

It is of no importance that an accounting claim (or other relief sought) sounded in equity at common law because the equitable roots of the claim is not determinative. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999). Rather, as the Federal Circuit has noted, "one cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages." *Consol. Edison Co. of New York, Inc. v. U.S., Dept. of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (quoting *Veda, Inc. v. United States Dep't of Air Force*, 111 F.3d 37, 39 (6th Cir.1997) and *A.E.*

---

[9] Defendants do not agree that Plaintiffs' claims are governed by the rules of law discussed in this section, but merely point out the necessary implications of Plaintiffs' own theory of their claims.

*Finley Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir.1990). Here, the law dictates that the end result of Plaintiffs' accounting claim is money (or a finding that no money is due), and there is no substantive difference between the equitable relief sought and damages (or declaratory relief that monies are necessary to restore a trust's values).

Plaintiffs' description of equitable restitution as specific relief rather than compensatory relief is merely an inartful attempt to obscure the true and expansive nature of the remedy that ordinarily follows a finding of a breach of trust. *See, e.g.,* Restatement 3d of Trusts § 205 ("Trustee's Liability In Case of Breach of Trust"). Plaintiffs' description of the remedy as restoring to a plaintiff "the very funds to which it is entitled but that have been wrongfully withheld" admits to no limiting principle. Plfs. Mem. at 41. As recognized by the CFC, the equitable principles on which Plaintiffs rest their claim are concerned with far more than the "correction of a bookkeeping error" they describe. "[I]t is without question that equitable remedies for breach of trust . . . are concerned with far more than just "'old money.' . . . Rather, if successful, a plaintiff is made whole, to the extent possible, by the payment of money for the government's breaches of trust." *Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 658 (Fed. Cl. 2007). Hence, Plaintiffs' claims here are essentially money damages claims that are beyond the Court's jurisdiction under APA Section 702. The "money damage vs. restitution" dichotomy is a false one in any event because the focus is on whether the "ultimate claim" is one "for the recovery of money." *Blue Fox*, 585 U.S. at 262. Plaintiffs' claims here, such as for unjust enrichment, are undeniably money claims that are forbidden by APA Section 702 because they encompass compensatory relief. *Id*. at 263.

## V.     The Indian Claims Commission Act Is Not Amended By Appropriations Act Language.

Plaintiffs do not dispute that the Indian Claims Commission Act barred their pre-1946

claims.  They argue only that the Department of the Interior Appropriations Acts ("Appropriations Acts") void the Indian Claims Commission Act ("ICCA") and revive their expired claims.  Plfs'. Mem. at 47-55.  This argument must fail because Plaintiffs' interpretation of the Appropriations Acts and ICCA, if countenanced, would eviscerate the restrictions imposed by these Acts.

The Appropriations Acts have to be read to give effect to all of the words of the Acts.  *United States v. Atl. Research, Corp.*, 127 S. Ct. 2331, 2336 (2007) ("Statutes must 'be read as a whole.'") (quoting *King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991)).  Congress explicitly limited the scope of the Appropriations Acts by providing that "notwithstanding any other provision of law, the *statute of limitations shall not commence to run* on any claim, including any claim in litigation pending on the date of the enactment of this Act . . . ." *See, e.g.,* Pub. L. No. 101-512, 104 Stat. 1915 (1990) (emphasis added).  The phrase "notwithstanding any other provision of law" in the Appropriations Acts does not supersede the ICCA because it does not apply to the ICCA.  *Cf.* Plfs'. Mem. at 48-50.  Plaintiffs' interpretation would eliminate Congress' restriction that the Appropriations Acts (1) apply only to statutes of limitations, and (2) apply only where such periods have not yet commenced.[7]  Either of these restrictions on the scope of the Interior Appropriations Acts is sufficient to defeat Plaintiffs' pre-1946 claims.

Plaintiffs' attempt to cast the ICCA as a statute of limitations is unavailing.  Plfs. Mem. at 53-54.  Section 12 of the ICCA operates as a statute of repose, rather than a statute of limitations, because it fixes a time by which Plaintiffs were required to bring all of their pre-1946 claims.

---

[7] Alternatively, Plaintiffs would have the court unnecessarily overturn the ICCA.  Such a result would run contrary to well established precedent favoring the preservation of existing statutes. *Agri- Processor Co. v. NLRB*, 514 F.3d 1, 4 (D.C. Cir. 2008) (citations omitted) ("where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. Thus, courts should not infer that one statute has partly repealed another unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary.")

Plaintiffs' two arguments to the contrary lack merit.  First, Plaintiffs' reliance on the ICCA's use of the phrase "limitations" is inaccurate because the meaning of an act is controlled by the act's substance, rather than the act's title.  *Regalado Cuellar v. United States*, 128 S. Ct. 1994, 2000 (2008) ("[W]e must be guided by the words of the operative statutory provision, and not by the common meaning of the statute's title.").  Second, Plaintiffs' reliance upon dicta characterizing the ICCA as a "limitation" is misplaced because the cases cited by Plaintiff, *see* Plaintiff's Mem. at 54, dismissed claims based upon the ICCA bar, regardless of whether the ICCA operated as a statute of repose or a statute of limitations.  *See, e.g., Sioux Tribe v. United States*, 205 Ct. Cl. 148, 201 (Ct. Cl. 1974).  Plaintiffs have failed to advance a valid argument in opposition to Defendants' position that the ICCA functions as a statute of repose.  *Burlington N. & Santa Fe Ry. Co. v. Skinner Tank Co.*, 419 F.3d 355, 363 (5th Cir. 2005)("[W]ith the expiration of the period of repose, the putative cause of action evanesces; life cannot thereafter be breathed back into it.")  Therefore, the Appropriations Acts dealing solely with statutes of limitations do not revive Plaintiffs' expired, pre-1946 claims.

Even if the ICCA's jurisdictional bar were considered a statute of limitation, however, Plaintiffs' interpretation of the Appropriations Acts still fails because it would divest the phrase "commence to run" of any meaning.  As this Court held in *Cobell v. Babbitt*:

> Although the Court agrees that the plaintiffs fall under the protections of the [Interior Appropriations Acts] because their claim is one for "trust mismanagement," these protections do not include the revival of potentially long stale claims. The tolling language clearly stops the clock from commencing to run on the plaintiffs' viable claims as of October 1, 1990. . . .  In other words, the provision only tolls a clock that has not commenced running. It cannot revive claims for which the clock stopped running long ago.

30 F. Supp. 2d 24, 43-44 (D.D.C. 1998) (collecting cases holding that tolling statutes do not revive

stale claims).  The Appropriations Acts do not address statutes of limitations that (1) have commenced to run, or (2) have already expired.  The ICCA not only commenced to run in 1946, but also expired in 1951.  ICCA § 12, 60 Stat. 1052 (1946) ("The Commission shall receive claims for a period of five years after the date of the approval of this Act and no claim existing before such date but not presented within such period may thereafter be submitted to any court . . .").  Plaintiffs' pre-1946 claims both commenced to run in 1946 and expired in 1951.  Therefore, the Appropriations Acts do not revive Plaintiffs' long-expired pre-1946 claims.[9]

Congress could have voided the ICCA's application to all tribes, but it declined to do so. If Congress had intended to void the ICCA, it presumably would have used the language similar to that it  used to revive the Pueblo of Isleta's expired claims:

> **Notwithstanding** sections 2401 and 2501 of title 28, United States Code, and **section 12 of the Act of August 13, 1946 (60 Stat. 1052), or any other law which would interpose or support a defense of untimeliness, jurisdiction is hereby conferred** upon the United States Court of Federal Claims . . . .

Pub. L. No. 104-198 (1996) (emphasis added).  The Pueblo of Isleta Act, which explicitly specified the ICCA and all laws that would "support a defense of untimeliness," is in stark contrast to the Interior Appropriations Acts, which contain restrictions on their scope and did not revive Plaintiffs' expired claims.

*Shoshone Indian Tribe v. United States* addressed the Interior Appropriations Acts application to a Tribe's claims "from August 14, 1946 onward."  364 F.3d 1339, 1343 (Fed. Cir.

---

[9]  Plaintiffs contend that the Appropriations Acts "deferred the accrual of the statute of limitations."  Plfs. Mem. at 48.  This contention is *per se* flawed.  The revival of Plaintiffs' long-dead claims would amount to more than deferral of the accrual of a statute of limitations.  A cause of action may accrue only once, and it is fixed on the date on which it accrues.  *See* BLACK'S LAW DICTIONARY 14 (6th ed. 1991)("A cause of action 'accrues' when a suit may be maintained thereon"); *DXS, Inc. v. Siemens Med. Sys.*, 100 F.3d 462, 472 FN 13 (6th Cir. 1996)("The date of accrual of a cause of action for statute of limitations purposes is a question of fact").

2004), *cert. denied*, 544 U.S. 973 (2005). To the extent that *Shoshone Indian Tribe v. United States*, 71 Fed. Cl. 172 (Fed. Cl. 2006), and *Osage Nation v. United States*, 57 Fed. Cl. 392, 396 (Fed. Cl. 2003), did not give effect to the full language of the Appropriations Acts and the ICCA's elimination of pre-1946 claims, the persuasive value of these decisions of the CFC should be discounted.[9] Regardless of whether the ICCA barred Plaintiffs' pre-1946 claims as a statute of repose or a statute of limitations, Plaintiffs' claims that expired in 1951 were not revived by the Interior Appropriations Acts.

**VI.    Congress Has Established No Accounting Duty Relating To Non-Monetary Tribal Trust Assets.**

**A.    There is no Fundamental Right to An Accounting of Non-Monetary Assets.**

Plaintiffs do not have a fundamental right to the accounting of non-monetary trust assets that they seek in this Court. Plaintiffs fail to respond to Defendants' argument that Plaintiffs have failed to ground their right to an accounting in relevant treaties, statutes, or regulations requiring a discrete final agency action by Defendants with respect to trust asset accounting. Instead, Plaintiffs seek an all-encompassing right without limitation, and they fail to assert a discrete agency action that Defendants were required to take.

A court may not find one all-encompassing accounting of all tribal real property merely on the basis that such property is held in trust. In *Mitchell I*, the Supreme Court held that the General Allotment Act could not be read as establishing a fiduciary responsibility for management of allotted

_____

[9] Defendants note that the federal government's response to the Tribes' motion for leave to amend their petitions in *Shoshone Indian Tribe*, No. 79-cv-00458, did not concede that any pre-1946 claims were allowable. *Cf.* Plfs. Mem. at 55. Thus, the government remains free in that case to seek dismissal of all of the Tribes' pre-1946 claims. *See Land Grantors v. United States*, 77 Fed. Cl. 686, 687 (Fed. Cl. 2007) (Government allowed to file Motion to Dismiss Amended Complaint after unsuccessfully opposing amendment).

forest lands and created only a limited trust relationship between the United States and the respondents. 445 U.S. at 542. Instead, any rights that the *Mitchell* respondents sought to enforce in the trust relationship had to be found in some source other than the Act (*id.,* at 546), and, later, the respondents had to cite to specific statutes and the regulations promulgated under these statutes (*Mitchell II*, 463 U.S. at 219-223). Likewise, it is not enough for Plaintiffs to merely allege that they are entitled to an all-encompassing accounting. Plaintiffs have to identify specific statutory duties and the discrete agency actions to support jurisdiction. Plaintiffs fail to do so.

B.    **The Court Should Not Excuse Plaintiffs' Failure to Exhaust Administrative Remedies.**

Plaintiffs are required to exhaust their administrative remedies prior to seeking judicial relief outside of the administrative framework, and their arguments to the contrary are unavailing. First, their claimed status as trust beneficiaries does not excuse them from the requirement that they exhaust their administrative remedies. In *Casanova v. Norton*, 2006 WL 2683514 (D. Ariz. Sep. 18, 2006), the court dismissed a lawsuit for lack of subject matter jurisdiction brought by trust beneficiaries due to their failure to exhaust administrative remedies. *Id*. at *1. The Court held that there were no exceptions to APA exhaustion requirements and that, given the allegations that the BIA had failed to act, the plaintiff had to follow the agency's administrative procedures. *Id*. at *2. Furthermore, Plaintiffs are wrong in their assertion that Defendants have somehow agreed that Plaintiffs are entitled to anything other than what they have the power to seek administratively. Plfs. Mem. at 58 (citing Tr. of 2/25/08 Status Conf. in *Ak-Chin*). Defendants recognize Plaintiffs' right to seek non-monetary trust information only through the administrative procedures enacted by Interior.

Second, Plaintiffs' assertions that the information subject to the regulations cited by

Defendants in their motion is different in scope and nature from the information Plaintiffs seek are unavailing. Specifically, Plaintiffs make much of the fact that 25 C.F.R. § 150.8 provides only the authorization for BIA, upon request, to perform and provide a land title examination. Plfs. Mem. at 58. Plaintiffs essentially seek to make this Court believe that this is the only information that they may seek from BIA. Plaintiffs ignore Defendants' citation to 25 C.F.R. Part 2, which contains procedures for administrative remedies by which Plaintiffs may challenge alleged actions and *inaction* by BIA. In fact there is a perfect correlation between the appeals regulation and Plaintiffs' claims here. Plaintiffs are wrong when they baldly assert that they cannot seek background records on leases or easements under the regulations: under 25 C.F.R. § 150.10, Plaintiffs are allowed access to land records, unless such access would violate the Privacy Act, 5 U.S.C. § 552a, or other law restricting access to such records. Plaintiffs fail to establish in their Complaints or Response that they have followed these procedures and have exhausted the administrative remedies before seeking judicial review of alleged agency action or inaction.

## VII. Conclusion

For the reasons stated above and in the Motion to Dismiss, the Court should dismiss Plaintiffs' claims on the primary basis that they fail to comply with the many limits to judicial review found in the APA.[10]

---

[10] Plaintiffs argue that Defendants have confessed error to their claims and that Defendants' motion to dismiss presents nothing more than unjustified delay. Plaintiffs ignore key aspects of Defendants' position about the proper role of judicial review in these cases, which Defendants have asserted in virtually every filing and statement made to the Court, thus far. While Plaintiffs quote from a transcript of proceedings before this Court on June 6, 2007, they conveniently ignore statements by Defendants' counsel that the requested remand was to review the accounting work that had been done by Interior and to determine whether to take "superseding actions." *Salt River-Pima Maricopa* 6/6/2007 Hearing Tr. at 39. Unlike these Plaintiffs, other Plaintiffs did not read Defendants' remand motion as a confession of error. *See* Assiniboine and Sioux Tribe of the Ft. Peck Indian Reservation Memorandum in Opposition to the Defendants' Motion for Remand
(continued...)

Respectfully submitted on this 23rd day of July, 2008,

RONALD J. TENPAS
Assistant Attorney General

/s/     Brian Collins
JOHN H. MARTIN
BRIAN COLLINS
ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (303) 844-1383
Tel: (202) 305-
Tel: (202) 305-0241
Fax: (202) 353-2021

OF COUNSEL:

LAWRENCE JENSEN
PAUL SMYTH
THOMAS BARTMAN
Office of the Solicitor
United States Department of the Interior
Washington, D.C.  20240

TERESA DAWSON
THOMAS KEARNS
Office of the Chief Counsel
United States Department of the Treasury
Washington, D.C.  20217

---

[10]/(...continued)
and Stay of Litigation, Case No. 02-0035 (Dkt. 49).  Defendants' remand sought an opportunity to make a decision on what further accounting might be necessary "as Interior deems necessary under its statutory and regulatory mandates."  *See* 12/19/07 Order Denying Remand at 6, Case No. 04-00283 (Dkt. 54).